RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
DEC 18 2023
KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA
## DIVERSITY OF CITIZENSHIP

*Civil Action for Aggravated Torts of Slander and Libel seeking Twelve Billion Dollars in Exemplary Damages; Jury Trial Demanded*

| | |
|---|---|
| TAMAH JADA CLARK *EX REL.* ANTI-SEMITISM DEFENSE LEAGUE ™, **PLAINTIFF** | FILED IN CLERK'S OFFICE U.S.D.C. - Atlanta <br><br> DEC 19 2023 <br><br> KEVIN P. WEIMER, Clerk <br> By: _____ Deputy Clerk |
| Vs. | |
| X CORP., WORLD JEWISH CONGRESS, AMERICAN ISRAEL PUBLIC AFFAIRS COMMITTEE, **DEFENDANTS** | **1 : 23 -CV- 5 8 4 0** |

**Sunday, November 19, 2023**

*I know thy works, and tribulation, and poverty, (but thou art rich) and I know the blasphemy of them which say they are Jews, and are not, but are the synagogue of Satan.* Revelations 2:9

## STATEMENT OF CLAIM

COMES NOW TAMAH JADA CLARK, appearing specially,[1] *ex rel.* ANTI-SEMITISM DEFENSE LEAGUE™, "PLAINTIFF", seeking exemplary damages against DEFENDANTS: X. CORP., WORLD JEWISH CONGRESS, and AMERICAN ISRAEL PUBLIC AFFAIRS COMMITTEE for aggravated slander and libel,[2] at Law; whereas DEFENDANTS did

---

[1] "The power to declare the rights of individuals and to measure the authority of governments, this Court said 90 years ago, 'is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy.' Chicago Grand Trunk R. Co. v. Wellman, 143 U.S. 339, 345 [ 12 S.Ct. 400, 402, 36 L.Ed. 176] (1892). Otherwise, the power 'is not judicial . . . in the sense in which judicial power is granted by the Constitution to the courts of the United States.'" *Centre for Independence of Judges v. Mabey*, 19 B.R. 635, 640 (D. Utah 1982)

[2] "Slander is a private wrong or tort, cognizable by the common law, the remedy for which is a civil action formerly known as an " action on the case for words," and now as an action or the action of or for slander. Libel is both a

1

maliciously, falsely slander PLAINTIFF orally and written[3], and subsequently published said slanders as libels injurious to PLAINTIFF in name, fame, trade, and profession with evil motive, actual malice, and deliberate oppression. **Jury trial is demanded.**

## JURISDICTION AND VENUE

### I.

All parties are citizens of the United States, there is complete diversity between all parties, and the amount in controversy is twelve billion dollars.

### II.

Tort action at common law requires application of state law. [4][5] *Well Works v. Layne*, 241 U.S. 257, 260 (1916) ("A suit arises under the law that creates the cause of action.")

### III.

---

public wrong or crime and a private wrong or tort, cognizable by the common law. The remedy for the public wrong is by indictment or criminal information. The remedy for the private wrong is a civil action, now known as an action or the action of or for libel." (Inner notes omitted) John Townshend. *A Treatise on the Wrongs Called Slander and Libel* §§ 8, 9 (3rd ed. 1877).

[3] "Different definitions of slander are given by different commentators upon the subject; but it will be sufficient to say that oral slander, as a cause of action, may be divided into five classes, as follows: (1.) Words falsely spoken of a person which impute to the party the commission of some criminal offence involving moral turpitude, for which the party, if the charge is true, may be indicted and punished. (2.) Words falsely spoken of a person which impute that the party is infected with some contagious disease, where, if the charge is true, it would exclude the party from society; or (3.) Defamatory words falsely spoken of a person, which impute to the party unfitness to perform the duties of an office or employment of profit, or the want of integrity in the discharge of the duties of such an office or employment. (4.) Defamatory words falsely spoken of a party which prejudice such party in his or her profession or trade. (5.) Defamatory words falsely spoken of a person, which, though not in themselves actionable, occasion the party special damage." *Pollard v. Lyon*, 91 U.S. 225, 226 (1875)

[4] "Civil actions for slander and libel developed in early ages as a substitute for the duel and a deterrent to murder. They lie within the genuine orbit of the common law, and in the distribution of American sovereignty they fall exclusively within the jurisdiction of the states." Brant, The Bill of Rights: Its Origin and Meaning 502-503 (1965).

[5] "It is now settled that States 'have power to legislate against what are found to be injurious practices in their internal commercial and business affairs, so long as their laws do not run afoul of some specific federal constitutional prohibition, or of some valid federal law.'" *Ferguson v. Skrupa*, 372 U.S. 726, 730-31 (1963)

2

The court is bound by state law.[6] *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) ("federal courts sitting in diversity cases, when deciding questions of "substantive" law, are bound by state court decisions as well as state statutes. The broad command of *Erie* was therefore identical to that of the Enabling Act: federal courts are to apply state substantive law and federal procedural law.")

### IV.

Notwithstanding Article I, [7] [8][9] PLAINTIFF invokes the court's limited Article III jurisdiction. [10][11] *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 45 (1996) ("Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction") [12]

## PARTIES

### I.

---

[6] "From these consideration the Congress wisely enacted, 'That the laws of the several' States, except where the constitution, treaties, or statutes, of 'the United States shall otherwise require or provide, shall be' regarded as rules of decision in trials at common law in the 'courts of the United States, in cases where they apply.' This adoption of the State laws, extends as well to the unwritten, as to the written law; — to the law arising from established usage and judicial determinations, as well as to the law created by positive acts of the Legislature." *Brown v. Braam*, 3 U.S. 344, 352 (1797)

[7] "The courts of the District of Columbia are created by Congress by virtue of its authority 'to exercise exclusive legislation in all cases whatsoever over such district.' Const., Art. I, § 8, clause 17. In this respect the courts of the District are to be classed with the territorial courts." *United States v. Evans*, 213 U.S. 297, 298 (1909)

[8] "Territorial courts are not courts of the United States within the meaning of the Constitution, as appears by all the authorities... Courts of this kind, whether created by an act of Congress or a territorial statute, are not, in strictness, courts of the United States; or in other words, the jurisdiction with which they are invested is not a part of the judicial power defined by the third article of the Constitution". *McAllister v. United States*, 141 U.S. 174, 183 (1891)

[9] "This concurrent jurisdiction which the national government necessarily possesses to exercise its powers of sovereignty in all parts of the United States is distinct from that exclusive power which, by the first article of the Constitution, it is authorized to exercise over the District of Columbia, and over those places within a State which are purchased by consent of the legislature thereof, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings." *Ex Parte Siebold*, 100 U.S. 371, 395 (1879)

[10] "This limitation upon the judicial power is, without question, a reflection of concern for the sovereignty of the States, but in a particularly limited context ... Because of the problems of federalism inherent in making one sovereign [subject to] ... the other, a restriction upon the exercise of the federal judicial power has long been considered to be appropriate". *Employees v. Missouri Public Health Dept*, 411 U.S. 279, 293-94 (1973)

[11] "The judiciary act was only intended to carry the constitution into effect, and cannot amplify, or alter, its provisions." *Mossman v. Higginson*, 4 U.S. 12, 13 (1800)

[12] "If it had been intended to leave it in the discretion of the legislature to apportion the judicial power ... according to the will of that body, it would certainly have been useless to have proceeded further than to have defined the judicial power, and the tribunals in which it should be vested." *Marbury v. Madison*, 5 U.S. 137, 174 (1803)

PLAINTIFF, TAMAH JADA CLARK, a citizen of Georgia, is the *real party in interest*; ANTI-SEMITISM DEFENSE LEAGUE ™ is an unincorporated common-law "entity" used to facilitate the trade of PLAINTIFF, a Hebrew advocate of Semitic persons and interests.

## II.

DEFENDANT "X CORP." is a citizen of the State of California. DEFENDANT "WORLD JEWISH CONGRESS" is a citizen of the State of New York. DEFENDANT "AMERICAN ISRAEL PUBLIC AFFAIRS COMMITTEE" is a citizen of the District of Columbia. DEFENDANTS are citizens of their respective States and Territory operating in a private corporate, non-sovereign capacity as "artificial person[s]" rather than "organized political communit[ies]." *Missouri, Kansas & Texas Railway Co. v. Missouri Railroad & Warehouse Commissioners*, 183 U.S. 53 (1901). DEFENDANTS are not citizens within the original meaning of Article III,[13] yet are liable at Law for prohibitory acts.[14]

## III.

---

[13] "[i]in reaffirming 'the doctrinal wall of *Chapman* v. *Barney*,' we explained *Russell* as a case resolving the distinctive problem 'of fitting an exotic creation of the civil law . . . into a federal scheme which knew it not.' 382 U.S., at 151. There could be no doubt, after *Bouligny* that at least common-law entities (and likely all entities beyond the Puerto Rican *sociedad en comandita*) would be treated for purposes of the diversity statute pursuant to what *Russell* called '[t]he tradition of the common law,' which is 'to treat as legal persons only incorporated groups and to assimilate all others to partnerships.'" *Carden v. Arkoma Associates*, 494 U.S. 185, 190 (1990)

[14] "The common law has established a principle, that no prohibitory act shall be without its vindicatory quality; or, in other words, that the infraction of a prohibitory law, although an express penalty be omitted, is still punishable." *Chisholm Ex'r. v. Georgia*, 2 U.S. 419, 422 (1793)

4

Federal Rules of Civil Procedure do not alter the jurisdiction of U.S. District Courts; substantive rights of PLAINTIFF may not be diminished, [15][16] nor those of DEFENDANTS enlarged.[17]

## CAUSE OF ACTION

### I.

On or around November 3, 2023, and on or around November 8, 2023, DEFENDANTS wickedly intending to injure PLAINTIFF, did maliciously utter and publish of and concerning PLAINTIFF, the certain false, scandalous and defamatory matters following. By reason of which PLAINTIFF has been brought into public scandal and disgrace, and greatly injured in good name, fame, trade, and profession.

- a. DEFENDANTS falsely charged PLAINTIFF with 20 counts of "Hateful Conduct" and published the defamatory allegations on "X" social media platform, severally, in 20 distinct instances.
- b. DEFENDANTS imputed infamous and illicit behavior to PLAINTIFF, stating: "You may not promote violence against, threaten, or harass other people on the

---

[15] "While the ancient forms of action are now abolished, all the various remedies known to the law still remain, and are administered through the medium of the single civil action of the code quite as certainly and much more speedily than under the former practice." *Wilcox v. Saunders*, 4 Neb. 587 (1876)

[16] "The code has not changed the principles by which courts determine the rights, duties and liabilities of the parties to an action. They remain as before its adoption ; therefore , in stating a cause of action it must appear from the facts alleged that there is a liability of the defendant to the plaintiff to enforce which he is entitled to invoke the aid of the court. To enforce or protect these rights, all the remedies known, either at law or in equity, still remain to a party, and may be speedily applied by the court through the single civil action of the code." Samuel Maxwell. A Treatise on the Law of Pleading, p. 8 (1892).

[17] "Neither Federal Rule of Civil Procedure 17(a), captioned 'Real Party in Interest,' nor Rule 19, captioned 'Joinder of Persons Needed for Just Adjudication,' requires plaintiffs or defendants to name and join any additional parties to this action. Both Rules, we note, address party joinder, not federal-court subject-matter jurisdiction. See Rule 82 ('[The Federal Rules of Civil Procedure] shall not be construed to extend or limit the jurisdiction of the United States district courts. . . .'); Advisory Committee's Notes on Fed. Rule Civ. Proc. 19, 28 U. S. C. App., pp. 696-698. Rule 17(a) directs that '[e]very action shall be *prosecuted* in the name of the real party in interest.' (Emphasis added.) That Rule, as its text displays, speaks to joinder of *plaintiffs*, not defendants." *Lincoln Prop. v. Roche*, 546 U.S. 81, 90 (2005)

5

      basis of race, ethnicity, national origin, sexual orientation, gender, gender identity, religious affiliation, age, disability, or serious disease."

c. DEFENDANTS implied PLAINTIFF is guilty of anti-Semitism, "hate crime", bigotry, racism, anti-Jewishness, xenophobia, harassment, extremism, terrorism, incitement, slander, and libel—all of which, collectively and severally, are injurious to PLAINTIFF in name, fame, trade, and profession.

d. DEFENDANTS falsely imputed to PLAINTIFF the indictable criminal offenses of libel, incitement, and "hate crime".

e. There is a common-law presumption that an individual's reputation is a good one. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 770 (1986) ("As to falsity, [Georgia] follows the common law's presumption that an individual's reputation is a good one. Statements defaming that person are therefore presumptively false")

## II.

PLAINTIFF is a Hebrew advocate for Semitic persons and interests whose trade relies upon fostering positive, reliable relationships with members of society. Maliciously disparaging falsehoods as to PLAINTIFF's professional ability, fitness, truthfulness, moral character, and susceptibility to punishment for anti-Semitism, other infamy, and indictable criminal offenses are irreconcilably injurious to PLAINTIFF's trade. DEFENDANTS had advance knowledge of these facts but proceeded to maliciously and intentionally libelously slander PLAINTIFF on or around November 3rd and 8th of 2023.

a. PLAINTIFF is a Biblical Hebrew or *Israelite* scholar who has written a Textbook published by Act of Congress in 2022 on the topic of Semitism that proves the ethnic supplantation of Israelites by Jews.[18]

---

[18] Clark, Tamah Jada (2022): The Final Exodus. Jewish Anti-Shemitism and Ethnic Supplantation: Aphoristic Prolegomena on Cultural Holocaust in the Holy Land and Surrounding Region; Mandating Reparation and Restitution for Descendants of the Transatlantic Slavetrade; containing A Criminal Indictment of The United States, et. al.; comprising An Outline of The Final Exodus: by Tamah Jada Clark. figshare. Book. https://doi.org/10.6084/m9.figshare.21731057.v1

6

b. PLAINTIFF furnished DEFENDANTS with access to the Textbook in addition to Notice of their perpetuation and propagation of falsehoods concerning Semitism and anti-Semitism, termed *Illegal Judaic Propaganda* on October 10, 2023, and subsequently published to "X" social media platform as a general public notice. This Notice was signed in PLAINTIFF's full legal name. DEFENDANTS concealed or removed this Notice from "X" social media platform— demonstrating DEFENDANTS' aggravated, calculated intent to defame and injure PLAINTIFF with evil motive, actual malice, and deliberate oppression.

c. PLAINTIFF furnished DEFENDANTS with access to the Textbook a second time in conjunction with a Second Notice of their perpetuation and propagation of falsehoods concerning Semitism and anti-Semitism, termed *Illegal Judaic Propaganda* on October 14, 2023, and subsequently published to "X" social media platform as a general public notice. This Second Notice was also signed in PLAINTIFF's full legal name. DEFENDANTS concealed or removed this Second Notice from "X" social media platform as well— once again demonstrating DEFENDANTS' aggravated, calculated intent to defame and injure PLAINTIFF with evil motive, actual malice, and deliberate oppression.

d. In addition to the Textbook, Notice, and Second Notice, PLAINTIFF maintains an entire Website (www.TheADL.org) that contains each of those, as well as other free resources to educate society on Semitism and anti-Semitism as a free public service. Its address is listed countless times on "X" social media platform: in PLAINTIFF's posts, as well as contained in PLAINTIFF'S profile, and incorporated into PLAINTIFF's very profile picture/photo to ensure ample public notice has been given. DEFENDANTS were aware of PLAINTIFF's Website prior to November 3rd and 8th of 2023, but intentionally disregarded its existence and contents— also demonstrating the aggravated nature of DEFENDANTS' illicit actions to maliciously and spitefully injure PLAINTIFF with evil motive, actual malice, and deliberate oppression.

III.

Words must be construed according to the world's perception of them. *RUE v. MITCHELL*, 2 U.S. 58, 59-60 (1790) ("The sense in which words are received by the world, is the sense which Courts of Justice ought to ascribe to them, on the trial of actions for slander. Slander imports an injury; and the injury must arise from the manner in which the slanderous language is understood… [W]hen the reputation, trade, or profession, of a citizen it really affected, for the sake of doing justice to the dearest interests of individuals, as well as for the sake of preserving public order and tranquillity, every appeal to the tribunals of our country ought to be liberally sustained.") There is no positive connotation of "Hateful Conduct", but instead is understood by the world to mean illegal behavior harmful to society.

IV.

Definition of "Hateful Conduct" is publicly available at https://help.twitter.com/en/rules-and-policies/hateful-conduct-policy and explains how the world is to perceive its meaning, which is devoid of any positive connotation. It emphasizes attacks against "groups of people [that] are disproportionately targeted with abuse online" and "behavior that targets individuals or groups with abuse based on their perceived membership in a protected category." In that all 20 charges of "Hateful Conduct" involved Jewish organizations and persons, specifically, the world can only perceive this to mean PLAINTIFF is anti-Jewish, as well as anti-Semitic (oxymoronically).

V.

False, malicious, charges of anti-Jewishness and anti-Semitism (oxymoronically) embody an insurmountable stigma, "The Mark", more than sufficient to lead to social ostracization and financial ruination due to inability to foster trade or carry on a profession by subjecting the victim to public hatred, contempt, and ridicule. Two instances in recent memory (roughly October 2022 to January 2023) are those of Semites NBA star Kyrie Irving, and cultural icon Ye (formerly "Kanye") West who collectively lost billions, suffered exclusion and disqualification from their professions, and are subjected to constant public hatred and ridicule to this day as a direct consequence of being branded with The Mark.[19] DEFENDANTS' 20 slanderous charges

---

[19] "Where the language of a publication is reasonably susceptible of the construction that it makes a libelous charge, it becomes libelous when it conveys that charge and would be so understood by the person to whom the writing might be communicated." *Brandon v. Arkansas Fuel-Oil Co.*, 64 Ga. App. 139, 144 (Ga. Ct. App. 1940)

8

against PLAINTIFF are actionable *per se*. *Wolff v. Middlebrooks*, 256 Ga. App. 268 (Ga. Ct. App. 2002)

## VI.

DEFENDANTS have branded PLAINTIFF with The Mark, which affects PLAINTIFF's character generally in trade and profession as a Hebrew advocate of Semitic persons and interests who relies upon societal inclusion for trade. DEFENDANTS' words are actionable *per se*. *American Southern Ins. v. Goldstein*, 291 Ga. App. 1 (Ga. Ct. App. 2008)

## VII.

Words are actionable *per se* when intended to impute indictable criminal offenses which could result in an infamous character, and which were calculated to injuriously affect PLAINTIFF in social standing. Twenty false charges of "Hateful Conduct" imply that PLAINTIFF's Textbook, Notice, Second Notice, and Website are slanderous, false, and ill-intended to incite violence, and promote "hate crime"— thereby imputing libel, incitement, and "hate crime" to PLAINTIFF.

## VIII.

DEFENDANTS attributed the falsehoods of anti-Semitism, bigotry, racism, anti-Jewishness, xenophobia, harassment, extremism, and terrorism to PLAINTIFF—all contained within the publicly available definition of "Hateful Conduct". Maliciously uttering and writing libelous falsehoods later published, however accomplished, is publication by DEFENDANTS. *Brotherhood of Railroad Trainmen v. Jennings*, 232 Ala. 438, 439 (Ala. 1936) ("It is not necessary that there be direct proof of publication by defendant; any fact established to the satisfaction of the jury from which it legally may be inferred will be sufficient …If defendant write a libel which is in some way subsequently published, this is prima facie publication by defendant.")

## IX.

Twenty malicious public notices of 'Hateful Conduct' based upon slanderous falsehoods absent probable cause are libels ineligible for classification as 'privileged or private

communications'. *White v. Nicholls*, 44 U.S. 266 (1845) ("Every publication, either by writing, printing, or pictures, which charges upon, or imputes to, any person that which renders him liable to punishment, or which is calculated to make him infamous, or odious, or ridiculous, is *prima facie* a libel, and implies malice in the author and publisher towards the person concerning whom such publication is made… Falsehood and the absence of probable cause will amount to proof of malice.")

************

### X.

The 20 slanderous charges against PLAINTIFF by DEFENDANTS were done and directed to be done from verified "X" accounts speaking in the name and authority of WORLD JEWISH CONGRESS and AMERICAN ISRAEL PUBLIC AFFAIRS COMMITTEE who conspiratorially cooperated with X CORP. to injure PLAINTIFF with malicious libels.

### XI.

There is "no constitutional value in false statements of fact" because neither "the intentional lie nor the careless error materially advances society's interest" in open debate on public issues. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974).

### XII.

Publishing slanderous and libelous falsehoods extends beyond the realm of civil law and exceeds the limits of protection afforded under the Federal Bill of Rights, exposing tortfeasors to criminal prosecution. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942) ("Allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words — those which by their very utterance inflict injury or tend to incite an

Internal Filing ID:
GA-USD-NDG-11.19.2023-F1

immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.")

## XIII.

DEFENDANTS are involved in criminal activity, whereas libel is an indictable criminal offense. *Gandia v. Pettingill*, 222 U.S. 452, 454 (1912) ("Under the generally established American law in every instance of slander, either verbal or written, malice ... whenever substantially averred and the language, either written or spoken, is proved as laid, its existence will be inferred by the law until, in the event of denial, the proofs be overthrown or the language itself be satisfactorily explained.")

## XIV.

There is no federal law that shields tortfeasors from liability for activity that subjects them to criminal prosecution, notwithstanding neither the Communications Decency Act of 1996 (CDA) or any other Act—state or federal, nor the U.S. Constitution or any notion of freedom of speech thereunder, whose Bill of Rights are limitations placed upon the federal government (and its citizens) by the states.[20]

************

---

[20] "[T]he amendments to the Constitution of the United States, did not apply to the state governments. That they were limitations upon the power granted in the instrument itself; and not upon the power of distinct governments, framed by different persons, and for different purposes. To which I will add, what is matter of history, that so far from the states which insisted upon these amendments contemplating any restraint or limitation by them on their own powers; the very cause which gave rise to them, was a strong jealousy on their part of the power which they had granted in the Constitution. They, therefore, with anxious solicitude endeavoured, by these amendments, to guard against any misconstruction of the granted powers, which might, by possibility, be the result of the generality of the terms in which they were expressed." *Holmes v. Jennison*, 39 U.S. 540, 587-88 (1840)

## XV.

PLAINTIFF, in profession and trade, conducts all affairs in truth based upon the Hebrew Scriptures (Holy Bible) and substantiated by verified facts capable of standing in a court of law.

a. Most Jews are not Semites, neither is "Jew" or "Jewish" an ethnicity.
b. Jews are not descended from Biblical Hebrews (e.g. Israelites) but Khazars.
c. Ancient Israel and Jerusalem is not the ancestral homeland of Jews.
d. Zionism is unconstitutional and the Jewish Entity in the Holy Land is a criminal enterprise, the "Synagogue of Satan".
e. Benjamin Netanyahu is the Man of Sin spoken of in Scripture or the "Anti-Christ".
f. The Gaza Genocide presently being perpetrated by the Synagogue of Satan is the commencement of the Biblical Armageddon.
g. Zionist organizations—including, but not limited to Anti-Defamation League (www.ADL.org), American Israel Public Affairs Committee (www.AIPAC.org), Canary Mission (www.CanaryMission.org), and World Jewish Congress (www.WorldJewishCongress.org) – are subverting the American Republic and pose a serious threat to National security.

## XVI.

PLAINTIFF's state constitutional Liberties— rights to Freedom of speech, religion, and conscience, as well as the right to carry on a private profession and trade—are without the jurisdiction of the United States (and its citizens) to interfere with under any pretenses, whatever. *PADELFORD, FAY CO. v. MAYOR ALD. CITY SAVANNAH*, 14 Ga. 438, 463 (Ga. 1854) ("Laws of Congress are restricted to a certain sphere, and when they depart from this *sphere, they* are no longer supreme or binding. In the same manner, the States have certain independent powers, in which their Law [and Constitutions], are supreme")

## XVII.

Judaism is a religion—not an ethnicity— whose constituents, Jews, are of non-Semitic *predominantly* Caucasian origin. Use of the terms "Semitism", "anti-Semitism" and every related concept, phraseology, or notion stemming therefrom or in connection therewith are fallacious falsehoods that hinge upon *unconstitutional* Executive Order 13899 of December 11, 2019.

### XVIII.

Executive Order 13899 purports to redefine Semitism and anti-Semitism based upon the *intentional lie* that Jews are Semites or that discrimination against them amounts to "anti-Semitism". If it were constitutional, E.O. 13899 could only be applied within the strict confines of Title VI of the Civil Rights Act of 1964 (Title VI), 42 U.S.C. 2000d *et seq.*, that "[can]not cover discrimination based on religion" much less define or redefine ethnicities in that Title VI is a Federal funding law.

### XIX.

Executive Order 13899 violates the First Amendment by *constructively* implementing a national policy of favoritism toward Judaism to the detriment of Christianity—enshrined in the very Founding Charters— and other bona fide religions. It infringes the rights retained by the people (*see* Ninth Amendment) and interferes with states' rights (*see* Tenth Amendment).

### XX.

The President of the United States cannot, in his person and office, express or act upon partialities toward Judaism or other religions because, religious liberties are without the purview of the Federal Constitution. *Permoli v. First Municipality*, 44 U.S. 589 (1845) ("The Constitution of the United States makes no provision for protecting the citizens of the respective states in their religious liberties; this is left to the state constitutions and laws.") The U.S. Constitution does not sanction use of the Presidential Office for political activism for Judaism, known as "Zionism".

### XXI.

Internal affairs, for the executive Power, are limited to enumerated functions under Article II which are controlling when there is conflict with foreign policy. *U.S. v. Curtiss-Wright Corp.*, 299 U.S. 304, 315-16 (1936) ("The two classes of powers are different, both in respect of

Internal Filing ID:
GA-USD-NDG-11.19.2023-F1

their origin and their nature. The broad statement that the federal government can exercise no powers except those specifically enumerated in the Constitution, and such implied powers as are necessary and proper to carry into effect the enumerated powers, is categorically true only in respect of our internal affairs. In that field, the primary purpose of the Constitution was to carve from the general mass of legislative powers *then possessed by the states* such portions as it was thought desirable to vest in the federal government, leaving those not included in the enumeration still in the states.")

## XXII.

While "the exclusive recognition power is essential to the conduct of Presidential duties", that Authority only attaches when he "speaks for the Nation". *Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2087 (2014). He can only speak for the Nation in accordance with the confines of Article II, whereunder he represents the American Sovereignty abroad. *Mackenzie v. Hare*, 239 U.S. 299, 311 (1915) ("As a government, the United States is invested with all the attributes of sovereignty [but only in conformity to the Constitution.")

## XXIII.

Not every ostensible treaty, agreement, or action is a Presidential duty within the meaning of the U.S. Constitution and Laws. *Altman Co. v. United States*, 224 U.S. 583 (1912) Recognition of the provisional Jewish Government in the Land of Israel or "Palestine", *de facto*, by the United States government on May 14, 1948 is *unconstitutional* as is the purported "de jure" recognition of January 31, 1949—effectuated *outside of* the provisions of Article II.

## XXIV.

It is the collective People, not the Government (the "United States"), that are sovereign. *Glass v. Betsey*, 3 U.S. 6, 13 (1794) ("In Europe, the *Executive* is almost synonymous with the *Sovereign* power of a State; and, generally, includes legislative and judicial authority... Such is the condition of power in that quarter of the world, where it is too commonly acquired by *force*, or *fraud*, or both, and seldom by *compact*. In *America*, however, the case is widely different. Our government is founded upon compact. Sovereignty was, and is, in the people. It was entrusted by them, as far as was necessary for the purpose of forming a good government, to

14

the Federal Convention; and the Convention executed their trust, by effectually separating the Legislative, Judicial, and Executive powers; which, in the contemplation of our Constitution, are each a branch of the sovereignty... When, in short, either branch of the government usurps that part of the sovereignty, which the Constitution assigns to another branch, liberty ends, and tyranny commences.")

## XXV.

There is a "universally admitted rule which requires a law [or Constitution] to be construed according to the intention of the law-maker or [People of the several States], and this intention to be gathered from the language of the law [or Constitution], according to its plain and common acceptation." *Ex parte Newman*, 9 Cal. 502, 505 (Cal. 1858) Zionism as a de facto National policy in America and abroad in the Name and Authority of the People is unconstitutional, and places the Republic in eminent danger by prioritizing illicit Jewish interests and affairs above the Welfare of America.

## XXVI.

The public has a legitimate interest in knowing the truth about the Synagogue of Satan or Jewish Entity holding itself out as the *"State of Israel"*, *Judaism, Zionism, Semitism* and *anti-Semitism*; and PLAINTIFF has the right to express sentiments on those matters free of interference by DEFENDANTS. *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, 204 (Ga. 1905) ("The truth may be spoken, written, or printed about all matters of a public nature, as well as matters of a private nature in which the public has a legitimate interest. The truth may be uttered and printed in reference to the life, character, and conduct of individuals whenever it is necessary to the full exercise of the right to express one's sentiments on any and all subjects that may be proper matter for discussion.")

## XXVII.

Reasoning not the decision determines law.[21]

---

[21] "Because we have differed from other judges upon the question before us, we cannot allow that we are departing from the settled law, although it may be admitted that decided cases are in some sense, evidence of what the law is. I say in some sense, because it is not so much the decision, as it is the reasoning upon which the decision is based, which makes it authority, and requires it to be respected." *Bryan v. Berry*, 6 Cal. 394, 398 (Cal. 1856)

15

## DAMAGES AND RELIEF

### I.

PLAINTIFF prays exemplary damages in the amount of twelve billion dollars due to the aggravated nature of the slanders and libels by DEFENDANTS, and the profound effect of such illicit behavior on the State and society as a whole.

### II.

Defamation has a profound effect on society who has an interest in its deterrence.[22] *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966) ("Society has a pervasive and strong interest in preventing and redressing attacks upon reputation.") Compensation significant enough to help prevent future harm to society is in the interest of the state,[23] and it is customary under the common and statute law to punish men for aggravated misconduct excess compensation in the form of damages.[24]

### III.

The aim in awarding damages is to help prevent similar behavior. *Herbert v. Lando*, 441 U.S. 153, 172 (1979) ("Those who publish defamatory falsehoods ... are subject to liability, the aim being not only to compensate for injury but also to deter publication of unprotected material threatening injury to individual reputation.")

### IV.

---

[22] "The legitimate state interest underlying the law of libel is the compensation of individuals for the harm inflicted on them by defamatory falsehood." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341 (1974).

[23] "States have an especial interest in torts committed within its territory." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)

[24] "It is the duty of every State to provide, in the administration of justice, for the redress of private wrongs; yet the damages which should be awarded to the injured party are not always readily ascertainable... The general rule undoubtedly is that they should be precisely commensurate with the injury. Yet in England and in this country, they have been allowed in excess of compensation, whenever malice, gross neglect, or oppression has caused or accompanied the commission of the injury complained of. 'The law,' says Sedgwick in his excellent treatise on damages, 'permits the jury to give what it terms punitory, vindictive, or exemplary damages; in other words, blends together the interests of society and of the aggrieved individual, and gives damages, not only to recompense the sufferer but to punish the offender.' The discretion of the jury in such cases is not controlled by any very definite rules; yet the wisdom of allowing such additional damages to be given is attested by the long continuance of the practice." *Missouri Pacific Railway Co. v. Humes*, 115 U.S. 512, 521 (1885)

Exemplary damages are allowed where a tort is aggravated, and to the extent that the jury deems appropriate.[25] *Scott v. Donald*, 165 U.S. 58, 87 (1897) ("[the judge] directed and told [the jury] they were not bound to any certain damages… it is very dangerous for the judges to intermeddle in damages for torts…"")

V.

Damages are the only remedy the law provides and must be significant enough to vindicate the wrong perpetrated against PLAINTIFF in order to help protect the interest of the state and promote the safety of society as a whole. *Rosenblatt v. Baer*, 383 U.S. 75, 93 (1966) ("The destruction that defamatory falsehood can bring is, to be sure, often beyond the capacity of the law to redeem. Yet, imperfect though it is, an action for damages is the only hope for vindication or redress the law gives to a man whose reputation has been falsely dishonored.")

VI.

DEFENDANTS are severally very wealthy, and are capable of paying the damages demanded, which fact must be used to exact "much larger damages" than would be awarded "against a person of ordinary circumstances." *Washington Gas Light Co. v. Lansden*, 172 U.S. 534 (1899)

*Behold, I will make them of the synagogue of Satan, which say they are Jews, and are not, but do lie; behold, I will make them to come and worship before thy feet, and to know that I have loved thee.* Revelations 3:9

---

[25] "It is a well-established principle of the common law, that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant, having in view the enormity of his offence rather than the measure of compensation to the plaintiff. We are aware that the propriety of this doctrine has been questioned by some writers; but if repeated judicial decisions for more than a century are to be received as the best exposition of what the law is, the question will not admit of argument. By the common as well as by statute law, men are often punished for aggravated misconduct or lawless acts, by means of a civil action, and the damages, inflicted by way of penalty or punishment, given to the party injured. In many civil actions, such as libel, slander, seduction, c., the wrong done to the plaintiff is incapable of being measured by a money standard; and the damages assessed depend on the circumstances, showing the degree of moral turpitude or atrocity of the defendant's conduct, and may properly be termed exemplary or vindictive rather than compensatory. *DAY v. WOODWORTH ET AL*, 54 U.S. 363, 371 (1851)

17

/s/

TAMAH JADA CLARK *EX REL.*
ANTI-SEMITISM DEFENSE LEAGUE, ™
**PLAINTIFF**

1880 Braselton Hwy
Suite 118 #5018
Lawrenceville, Ga 30043

X/Twitter: @The_ADL_dot_org
Tel: 1(888) 256-6692 ext. 777
Fax: 1(888) 352-1570
E-mail: CommonLaw119@gmail.com
Web: www.TheADL.org