# IN THE UNITED STATES DISTRICT COURT
## FORT THE NORTHERN DISTRICT OF GEORGIA

_____

)
TAMAH JADA CLERK *EX REL*      )
ANTI-SEMITISM DEFENSE LEAGUE    )
    )
    )    Case No.:  1:23-cv-5840-JPB
    Plaintiff,    )
    )
    )
v.    )
    )
    )
X CORP., WORLD JEWISH CONGRESS,  )
AMERICAN ISRAEL PUBLIC AFFAIRS  )
COMMITTEE    )
    )
    Defendants.    )
_____

## AMERICAN ISRAEL PUBLIC AFFAIRS COMMITTEE'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

# I.     <u>INTRODUCTION</u>

Plaintiff's Complaint is a rambling web of largely irrelevant "facts" that requires one to cull through paragraph after paragraph of unfocused allegations to piece together a somewhat coherent narrative. The Complaint centers on Plaintiff's emphatic assertion that she, as a Biblical Hebrew and self-proclaimed "Israelite scholar," is a true Semite, and any implication that the Jewish people are the true Semitic people or that Israel is the Jewish people's ancestral homeland somehow slanders or defames her. To accept this assertion, however, this Court would have to adjudicate thousands of years of biblical and religious history simply to support Plaintiff's personal views of Judaism and her ethnic origins. The question of who is a "Jew" or a person of "true" Semitic descent, however, presents a nonjusticiable issue over which the Court lacks subject matter jurisdiction.

Incredibly, Plaintiff's Complaint alleges defamation on the part of the Defendants without specifying a single statement made by Defendants—and much less, Defendant AIPAC—concerning Plaintiff. Plaintiff makes oblique references to "20 instances" of defamatory statements allegedly published by Defendants on the "X" social media platform, but she does not otherwise specify what those statements entailed or even provide the Court with a copy of those statements despite their availability on a public platform. Instead, Plaintiff seeks a staggering $12 billion in

exemplary damages as a means of deterring Defendants from even so much as implying that anyone other than Plaintiff is of Semitic descent, even if those statements—which clearly constitute protected speech—do not otherwise reference Plaintiff (or the website she purports to represent) in any shape or form. The allegations in Plaintiff's Complaint, even if coherent, do not plausibly give rise to an entitlement to relief, and no amount of amendment would cure the underlying infirmities that plague her Complaint.

Indeed, Plaintiff's Complaint suffers from both procedural and substantive issues. As a threshold issue, Plaintiff fails to set forth facts sufficient to establish this Court's personal jurisdiction over Defendant AIPAC, a nonresident corporation, outside of her defamation claim, which, by itself, may not serve as a basis for the exercise of personal jurisdiction under Georgia law. Even if personal jurisdiction were established, Plaintiff's Complaint was not properly served on Defendant AIPAC. Substantively, Plaintiff's Complaint is riddled with generalized, conclusory statements and self-serving proclamations pled as if they were facts, all lacking in conciseness and clarity in violation of Rule 8(a) and failing to state a claim for relief under Rule 12(b)(6). For these reasons, and for the reasons set forth more fully herein, Plaintiff's Complaint must be dismissed.

## II.   STATEMENT OF RELEVANT ALLEGED FACTS

As Plaintiff alleges, Defendant AIPAC is a nonresident corporation and "citizen

of the District of Columbia." Dkt. 1 at 4 ¶ II. Plaintiff also brings her claim against Defendant World Jewish Congress, allegedly "a citizen of the State of New York," and Defendant "X Corp.," allegedly "a citizen of the State of California." *Id.*

The main thrust of Plaintiff's Complaint appears to be that Defendants published defamatory allegations on "X" social media platform on twenty separate occasions on or around November 3 and 8, 2023. *Id.* at 5. However, nowhere in her Complaint does Plaintiff cite the specific alleged defamatory statements, nor does she distinguish which of the Defendants purportedly made the statements. Plaintiff, however, claims that, because of these unspecified defamatory statements, "Plaintiff has been brought into public scandal and disgrace, and greatly injured in good name, fame, trade, and profession." *Id.*

Plaintiff describes herself as "a Hebrew advocate for Semitic persons and interests whose trade relies upon fostering positive, reliable relationships with members of society." *Id.* at 6 ¶ II. She also describes herself as "a Biblical Hebrew or *Israelite* scholar who has written a Textbook published by Act of Congress in 2022 on the topic of Semitism that proves the ethnic supplantation of Israelites by Jews." *Id.* at 6 ¶ II.a. Plaintiff claims to have "furnished Defendants with access to the Textbook in addition to Notice of their perpetuation and propagation of falsehoods concerning Semitism and anti-Semitism, termed *Illegal Judaic Propaganda* on October 10, 2023, and subsequently published to "X" social media

platform as a general public notice." *Id.* at 7 ¶ II.b. Plaintiff further claims to have furnished Defendants with access to the Textbook "a second time in conjunction with a Second Notice… on October 14, 2023, and subsequently published to 'X' social media platform as a general public notice." *Id.* at 7 ¶ II.c. In both instances, Plaintiff claims that Defendants collectively "concealed or removed" the Notice from "X" social media platform. *Id.* at 7 ¶¶ II.b., II.c. In neither instance, however, does Plaintiff explain how she purportedly furnished Defendants directly with "access to the Textbook" other than by posting it as a "general public notice."

Plaintiff claims, however, that she maintains a website, www.TheADL.org,[1] on which she published the Textbook, Notice, and Second Notice, "as well as other free resources to educate society on Semitism and anti-Semitism as a free public resource." *Id.* at 7 ¶ II.d. According to Plaintiff, "Defendants were aware of Plaintiff's Website prior to November 3rd and 8th of 2023," which she claims "is listed countless times on "X" social media platform: in Plaintiff's posts, as well as contained in Plaintiff's profile, and incorporated into Plaintiff's very profile

---

[1] This is the first time Plaintiff identifies any connection to the so-called "Anti-Semitism Defense League," on behalf of which she purports to bring her claims as an "ex rel." plaintiff. *Id.* at 7. Other than maintaining a website (which is currently under construction), it does not appear that the Anti-Semitism Defense League, or "theADL.org," is an actual entity. If it were an actual entity, Plaintiff could not represent the organization as a *pro se* plaintiff. Rather, the organization itself would need to be represented by counsel. If it is merely a website, Plaintiff cannot bring an "ex rel." complaint on behalf of a website.

picture/photo to ensure ample public notice has been given." *Id.*

As a result of Defendants' allegedly defamatory (yet unspecified) statements, Plaintiff claims that she has been branded with "The Mark," which she describes as "an insurmountable stigma" arising from "charges of "anti-Jewishness and anti-Semitism (oxymoronically)." *Id.* at 8 ¶ V. She alleges that the "20 slanderous charges" against her were perpetrated by Defendants World Jewish Congress and AIPAC "who conspiratorially cooperated with X CORP. to injure Plaintiff with malicious libels." *Id.* at 10 ¶ X. Plaintiff purports to conduct her "profession and trade … in truth based upon Hebrew Scriptures (Holy Bible) and substantiated by verified facts[2] capable of standing in a court of law." *Id.* at 12 ¶ XV.

Plaintiff claims she is entitled to exemplary damages in the staggering amount of "twelve billion dollars" due to the "profound effect of such illicit behavior on the State and society as a whole," which she justifies by claiming that "Defendants are severally very wealthy." *Id.* at 16.II, 17.VI.

---

[2] Among those so-called "verified facts" are the following claims, among others:
- "Most Jews are not Semites, neither is 'Jew' or 'Jewish' an ethnicity";
- "Ancient Israel and Jerusalem is not the ancestral homeland of Jews";
- "Zionism is unconstitutional and the Jewish Entity in the Holy Land is a criminal enterprise, the 'Synagogue of Satan'"; and
- "The Gaza Genocide presently being perpetrated by the Synagogue of Satan is the commencement of the Biblical Armageddon."

*Id.* at 12 ¶ XV.

### III.   STANDARD OF LAW

Although courts afford *pro se* litigants some leniency in construing pleadings, pro se litigants are required to comply with procedural rules. *See, e.g.*, *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) ("Despite construction leniency afforded *pro se* litigants, we nevertheless have required them to conform to procedural rules."). This Court should dismiss Plaintiff's Complaint in its entirety because Plaintiff has failed to comply with the Federal Rules of Civil Procedure in attempting to establish this Court's jurisdiction over Defendant AIPAC, effectuating service on Defendant AIPAC, and setting forth plausible claims against Defendant AIPAC.

### IV.   ARGUMENT

**A.   Plaintiff Fails to Establish this Court's Personal Jurisdiction Over Defendant AIPAC.**

As a threshold matter, this Court should dismiss Plaintiff's Complaint pursuant to Rule 12(b)(2) because Plaintiff fails to establish this Court's personal jurisdiction over Defendant AIPAC. *See Courbin v. Scott*, 596 F. Appx. 729, 735 (11th Cir. 2014) ("[A] defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings, so jurisdictional questions generally should be decided before reaching the merits." (citation and internal quotation marks omitted)).

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Exceptional Mktg. Grp. v. Jones*, 749 F. Supp. 2d 1352, 1360 (N.D. Ga. 2010) (quoting *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1257–58 (11th Cir. 2010)).

Plaintiff fails to allege facts sufficient to support an exercise of personal jurisdiction under Georgia's long-arm statute. Georgia's long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Diamond,* 593 F.3d at 1259. Here, Plaintiff does not allege whether Defendant AIPAC committed the allegedly tortious acts from within or outside the state. If from within the state, the long-arm statute permits basing jurisdiction on "a tortious act or omission within this state, ***except as to a cause of action for defamation of character arising from the act***." O.C.G.A. § 9-10-91(2) (emphasis added). If the allegations are instead based on committing "a tortious injury in this state caused by an act or omission outside this state," that is also insufficient to establish personal jurisdiction under the long-arm statute. Instead, the long-arm statute is clear that can be a basis for personal jurisdiction only "if the tort-feasor regularly does or solicits

- 7 -

business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." *Id.* § 9-10-91(3). Plaintiff's Complaint is devoid of any allegations that AIPAC "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state"—let alone that Plaintiff's claims arise from such conduct. *Id.* (stating that the cause of action must "*aris[e] from* any of the acts, omissions, ownership, use, or possession enumerated in this Code section" to support personal jurisdiction (emphasis added)). Therefore, whether the alleged defamation was committed within or outside the state, Plaintiff's allegations cannot support an exercise of personal jurisdiction over Defendant AIPAC in this case.

Moreover, personal jurisdiction over Defendant AIPAC does not comport with due process. The Due Process Clause limits "a [s]tate's authority to bind a nonresident defendant to a judgment of its court." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citation omitted). Jurisdiction is proper only when the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Off. Of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Plaintiff fails to plead specific personal jurisdiction.[3] Specific jurisdiction "derive[s] from and reflect[s] two sets of values—treating defendants fairly and protecting 'interstate federalism.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025(2021) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)). To adhere to these values, this Court must consider the following: (1) "whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum" state; (2) "whether the nonresident defendant 'purposely availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws;" and (3) "whether the exercise of personal jurisdiction comports with 'traditional notices of fair play and substantial justice.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citations omitted). Plaintiff bears the burden of establishing the first two requirements, and only then must Defendant AIPAC "make a 'compelling case' that the exercise of jurisdiction would violate traditional notices of fair play and substantial justice." *Id.* (quoting *Diamond*, 593 F.3d at 1267).

---

[3] The Supreme Court has recognized two types of personal jurisdiction: general jurisdiction, which attaches when a defendant is "essentially at home in the forum State," and specific jurisdiction, which "depends on an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2022) (alteration adopted) (internal quotations omitted). Here, Plaintiff fails to plead general personal jurisdiction. Her only claim about Defendant AIPAC's "home" is that Defendant AIPAC "is a citizen of the District of Columbia." Dkt. 1 at 4 ¶ II. Thus, there is no basis for general personal jurisdiction here.

With respect to the first inquiry, Plaintiff fails to allege facts sufficient to support "a strong 'relationship among the defendant, the forum, and the litigation.'" *Ford Motor Co.*, 141 S. Ct. at 1028 (citation omitted). The principal way to establish this relationship is through an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* at 1025 (citation omitted). This essential foundation is absent here. Plaintiff's defamation claim arises from "20 instances" in which Defendants allegedly published defamatory statements on "X" social media platform. As discussed herein, however, Plaintiff fails to identify a single, specific defamatory statement that Defendants—much less Defendant AIPAC—published or posted on their public social media accounts that concern Plaintiff or were otherwise directed toward Plaintiff. Plaintiff, therefore, fails to show any relationship among Defendant AIPAC, Plaintiff, and the State of Georgia.

As to the second inquiry, Plaintiff similarly fails to allege facts sufficient to demonstrate that Defendant AIPAC availed itself of the benefit of Georgia's laws. To support purposeful availment, the defendant must have had contacts with the forum that were his "own choice and not 'random, isolated, or fortuitous.'" *Id.* (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). And those contacts "must show that the defendant deliberately 'reached out beyond' its home," such as by "entering a contractual relationship centered" in the forum. *Id.* (quoting *Walden*, 571 U.S. at 285). Plaintiff fails to allege any facts that would support such a showing.

Moreover, because Plaintiff fails to identify a single, specific defamatory statement made or published by Defendant AIPAC concerning her, Plaintiff also fails to demonstrate that Defendant AIPAC's alleged tortious act was "intentional, aimed at the forum state, and caused harm that the defendant anticipated would be suffered in the forum state." *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1276 (11th Cir. 2022).[4]

Because Plaintiff fails to meet her burden with respect to the first two inquiries, the Court does not need to consider the third inquiry as to whether the exercise of jurisdiction in Georgia accords with "traditional notices of fair play and substantial justice." As such, Plaintiff's Complaint should be dismissed for lack of personal jurisdiction over Defendant AIPAC.

## B. Plaintiff Did Not Effectuate Sufficient Service of Process over Defendant AIPAC.

Plaintiff's Complaint is also procedurally deficient pursuant to Rule 12(b)(5) because she failed to effectuate proper service over Defendant AIPAC. *See Taylor v. Bailey*, No. 1:06-cv-1729-TWT, 2006 WL 3191185, at *1 (N.D. Ga. Oct. 30,

---

[4] Even if the Court were to consider the third inquiry, the burden on Defendant AIPAC, a nonresident corporation, in defending a baseless lawsuit in Georgia where the Plaintiff fails to set forth the essential elements of her defamation claim (namely, a specific defamatory statement, written or otherwise), outweighs any other interests that may exist. *See Del Valle*, 56 F.4th at 1277 (identifying four factors considered to resolve the third inquiry: (1) "the burden on the defendant;" (2) "the forum's interest in adjudicating the dispute;" (3) "the plaintiff's interest in obtaining convenient and effective relief;" and (4) "the judicial system's interest in resolving the dispute" (quoting *World-Wide Volkswagen*, 444 U.S. at 292)).

2006) ("A *pro se* litigant is still obligated to follow the requirements of Fed. R. Civ. P. 4." (citation omitted)); *see also Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) ("Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served."). Plaintiff purported to serve Defendant AIPAC by mailing a copy of the summons and complaint via certified mail to AIPAC's headquarters in the District of Columbia. *See* Ex. 1, Dec. of R. Hirsch, Esq. Service by certified mail on a nonresident corporation is insufficient under both federal and state law.

Under Rule 4(h), service of process on a nonresident corporation shall be effected "in a judicial district of the United States: (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment of law to receive service of process and—if the agent is authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1). As the Eleventh Circuit has explained, the term "delivering" refers to personal service. *Dyer v. Wal-Mart Stores, Inc.*, 318 F. App'x 843, 844 (11th Cir. 2009); *see also Taylor*, 2006 WL 3191185, at *2 (holding that plaintiff may not serve a nonresident corporate defendant by certified mail). Accordingly, Plaintiff may not effectuate service of process on a corporate defendant like AIPAC by mailing a copy of the summons and complaint to its place of business

- 12 -

without effectuating personal service by delivering a copy to an officer or agent of the corporation. Fed. R. Civ. P. 4(h)(1).

In this case, Plaintiff attempted to serve Defendant AIPAC by mailing a copy of the summons and Complaint to Defendant AIPAC's District of Columbia headquarters via certified mail return receipt requested. *See* Ex. 1 at ¶ 3.[5] The Complaint, however, was delivered to Defendant AIPAC's general mailroom, not served on an individual officer or agent of the organization, and the return receipt remained unsigned. *Id.* at ¶ 4. To date, Plaintiff has failed to file proof of service with this Court demonstrating effective service on Defendant AIPAC. *See generally* Dkt.; *see also Mitchell v. Wash. Mut.*, No. 1:10-cv-3196-TCB-JFK, 11 WL 13319193, at *1 (N.D. Ga. Mar. 9, 2011), *report and recommendation adopted*, 2011 WL 13319314 (N.D. Ga. Mar. 30, 2011) ("Once a defendant challenges service of process, plaintiff has the burden to demonstrate sufficient service of process. A signed return of service is *prima facie* evidence of proper service." (quoting *Hollander v. Wolf,* 2009, No. 09-80587-CIV, 2009 WL 3336012, at *3 (S.D. Fla.

---

[5] "In resolving a motion to dismiss for insufficiency of service of process, a court may make factual findings necessary to resolve the motion." *Mitchell v. Wash. Mut.*, No. 1:10-cv-3196-TCB-JFK, 11 WL 13319193, at *2 (N.D. Ga. Mar. 9, 2011) (citing *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008)). Because such motions do not address the merits of the claims brought in the complaint but are treated as matters in abatement, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant*, 530 F.3d at 1376.

Oct. 14, 2009)).

Alternatively, Plaintiff failed to effectuate service on Defendant AIPAC consistent with state law. Rule 4 provides that a plaintiff may effectuate service on a nonresident corporate defendant pursuant the law of the state "in which the district court is located." Fed. R. Civ. P. 4(e)(1). In Georgia, service on a corporation requires personal service, unless such service cannot be effectuated. O.C.G.A. § 9-11-4(e)(1)(A) (requiring delivery to the "president or other officer of such corporation or foreign corporation, a managing agent thereof, or a registered agent thereof," unless "service cannot be had in such manner," in which case to the Secretary of State); *see also* O.C.G.A. § 14-2-504(a)("A corporation's registered agent is the corporation's agent for service of process, notice, or demand required or permitted by law to be served on the corporation.").

Here, Plaintiff did not attempt to first serve Defendant AIPAC's registered agent. *See* Ex. 1, Hirsch Dec. ¶¶ 3–4. Nor did Plaintiff address the certified mailing of the Complaint to the secretary of the corporation when mailing it to AIPAC's headquarters. *Id.* As such, this Court should dismiss Plaintiff's Complaint for insufficient service of process.

## C.   Plaintiff's Shotgun Pleading Violates Rule 8(a).

This Court should dismiss Plaintiff's Complaint because it is a shotgun

pleading.[6] A "shotgun pleading" is one that does "not provide a short and plain statement of a claim as required by Rule 8." *Brown v. Air Line Pilots Ass'n*, 813 F. App'x 353, 355 (11th Cir. 2020). Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim as to enable the party to frame a responsive pleading. *See United States v. Metro Dev. Corp.*, 61 F.R.D. 83, 87 (N.D. Ga. 1973) (noting that "Rule 8 forms the cornerstone of the system of pleading under the Federal Rules of Civil Procedure"). A shotgun pleading fails "to give the defendant adequate notice of the claims against them and the ground upon which each claim rests." *Weiland v. Palm Beach Cty, Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). Shotgun pleadings patently violate the federal pleading standards. *Id.*; *see also Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020) ("Such a pleading is never plain because it is impossible to comprehend which specific factual allegations the plaintiff intends to support which of his causes of action, or how they do so.")

In this case, the Complaint is neither "short" nor "plain." One needs to wade through the litany of vague and conclusory rhetoric that pervades the Complaint to attempt to decipher Plaintiff's claim against the Defendants. The crux of Plaintiff's

---

[6] In addition, Plaintiff's Complaint violates Rule 10(b), which requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

Complaint appears to be that Defendants allegedly defamed her by claiming that the Jewish people, rather than the Hebrew Israelites, are the true Semitic people. This can be gleaned from a slapdash recital of various disjointed allegations set forth in unnumbered paragraphs and 25 footnotes, citing almost 200-year-old case law. *See, e.g.*, Dkt. 1 at 6–8.

Nowhere in her Complaint, however, does Plaintiff separate into a different count each cause of action or claim for which she seeks relief. Nor does Plaintiff specify which of the three named Defendants is responsible for the alleged acts or omissions. *See Weiland*, 792 F.3d at 1321–23 (identifying four categories of shotgun pleadings, including a complaint that does "not separate[e] into a different count each cause of action or claim for relief," and a complaint "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against").

Here, Plaintiff fails to differentiate the alleged misconduct of the individual Defendants and has instead drafted her Complaint in a way that suggests Defendants acted as a single unit. *See* Dkt. 1 at 5 (alleging that Defendants acted "severally" in publishing the defamatory allegations on "X" social media platform). This, coupled with the utter lack of clarity and conciseness of her Complaint, is sufficient reason

- 16 -

to dismiss Plaintiff's Complaint as a shotgun pleading in violation of Rule 8.[7] *See*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a complaint must

"give fair notice of what the … claim is and the grounds upon which it rests");

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that Rule 8(a)(2) demands

"more than an unadorned, the defendant-unlawfully-harmed-me-accusation"

(quoting *Twombly*, 550 U.S. at 545)).

## D. Plaintiff's Complaint Fails to State a Claim On Which Relief Can be Granted.

This Court should dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) on

the additional ground that it fails to state a claim on which relief can be granted. A

defamation claim must be based on a specific statement. Plaintiff's claim of

defamation implicates both libel and slander. *See, e.g.*, Dkt. 1 at 2 (claiming that

Defendants "slander[ed] Plaintiff orally and written"). "Libel" is the "false and

malicious defamation of another, expressed in print, writing, pictures, or signs,

tending to injure the reputation of the person and exposing him to public hatred,

contempt, or ridicule." O.C.G.A. § 51-5-1(a).[8] O.C.G.A. § 51-5-4(a) provides, in

---

[7] Given the vagueness of her claims, Plaintiff's Complaint could be open to multiple interpretations. Regardless of interpretation, however, Plaintiff's Complaint does not provide fair notice of her claims because it fails to identify a single defamatory statement made by Defendants, much less Defendant AIPAC.

[8] While Plaintiff's Complaint references alleged instances of both oral and written defamation, her Complaint is centered on Defendants' alleged conspiracy to publish defamatory statements on "X" social media platform. *See* Dkt. 1 at 5 ¶ I. (alleging that Defendants "did maliciously utter and publish of and concerning Plaintiff, the

relevant part, that "[s]lander or oral defamation consists in: (1) Imputing to another a crime punishable by law; … (3) Making charges against another in reference to his trade, office, or profession, calculated to injure him therein; or (4) Uttering any disparaging words productive of special damage which flows naturally therefrom."

Under Georgia law, to establish a viable defamation claim defamation, Plaintiff must plead: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *StopLoss Specialists, LLC v. VeriClaim, Inc.*, 340 F. Supp. 3d 1334, 1346 (N.D. Ga. 2018) (citing *Smith v. DiFrancesco*, 802 S.E.2d 69 (Ga. App. 2017) and *Wertz v. Allen*, 721 S.E.2d 122 (Ga. App. 2011)). Plaintiff fails to sufficiently plead any of these four elements to support her defamation claim, whether sounding in libel or slander.

Critically, Plaintiff fails to plead a specific defamatory statement made by any of the Defendants, much less by Defendant AIPAC. *See generally Grace v. Lowery*, 860 S.E.2d 159, 162 (Ga. App. 2021) (plaintiff asserting defamation must identify specific statements supporting that claim); *ITT Rayonier, Inc. v. McLaney*, 420 S.E.2d 610, 612 (Ga. App. 1992) (holding that slander claim fails "[i]f there is no

_____

certain false, scandalous and defamatory matters …"). As such, Plaintiff's defamation claim appears to be based on alleged libel.

- 18 -

evidence of any specific words or statements uttered"). Plaintiff claims that, on or around November 3 and 8, 2023, Defendants "published the defamatory allegations on "X" social media platform, severally, in 20 distinct instances." Dk.t 1 at 5. Nowhere in her Complaint, however, does Plaintiff specify *any* allegedly defamatory statements published by Defendant AIPAC. Instead, Plaintiff groups Defendants together, as if acting in a singular unit, and alleges that Defendants "conspiratorially cooperated with X CORP. to injure Plaintiff with malicious libels." *Id.* at 10 ¶ X. Defendants' social media postings are public.[9] There was nothing, therefore, preventing Plaintiff from specifically citing to those alleged "20 distinct instances" had Defendants, in fact, defamed her online or published any postings concerning

---

[9] The Court "may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment." *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (citation omitted). Facts that are "not subject to reasonable dispute" may be judicially noticed, including such facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(b). Courts can, therefore, take judicial notice of a publication date, as well as matters of public record. *Se. Clinical Nutrition Cntrs., Inc. v. Mayo Found. For Med. Educ. & Rsch.*, 135 F. Supp. 3d 1267, 1271 (N.D. Ga. 2013) (holding that a court can rely on newspaper articles or periodicals to take judicial notice of the time when a publication was commercially available). Here, the Court may take judicial notice of Defendant AIPAC's public "X" social media page and corresponding timeline to confirm that Defendant AIPAC did not post or publish any statements on November 3 or 8, 2023 (or anywhere else in its timeline) concerning Plaintiff or the Anti-Semitism League. And, to the extent relevant to Plaintiff's claims, nor did Defendant AIPAC publish any posts referencing Zionism, Anti-Semitism, or "ancestral homeland" on those dates. Even if Defendant AIPAC had published statements concerning those topics, such posts are based on speech protected by the First Amendment. *See* Ex. 1, Hirsch Aff. ¶ 6, attaching Nov. 3 and 8, 2023 AIPAC postings on "X" social media platform.

Plaintiff or the Anti-Semitism League.

Plaintiff also fails to allege any specific oral statements by Defendants to support a defamation claim sounding in slander. The entirety of her Complaint appears to center on these alleged "20 distinct instances" of postings on social media. The Complaint is devoid of any facts supporting any instances of oral defamation that may have allegedly occurred. Accordingly, Plaintiff cannot plead a defamation claim without setting forth the specific statements used in the allegedly defamatory communications. *See, e.g.*, *Bailey v. Priority Ambulance*, Case No. 1:20-cv-928-AT-JKL, 2020 WL 10056272, at *4 (N.D. Ga. Sept. 28, 2020) (dismissing defamation claim with regard to communications not specifically identified in the amended complaint); *Edmundson v. City of Atlanta*, Case No. 1:16-cv-04639-LMM, 2017 WL 4456892, at *6 (N.D. Ga. June 21, 2017) (holding that defamation claim cannot stand without the specific statement used in the allegedly defamatory communication).

Without alleging a specific defamatory statement, Plaintiff also fails to plead facts sufficient to support the second and third elements of a defamation claim. While Plaintiff alleges that Defendants are "tortfeasors" and "are involved in criminal activity," Dkt. 1 at 11, she has not set forth any facts to support that Defendant AIPAC published any communications about her, either negligently or intentionally. "Georgia law is abundantly clear that [Plaintiff] cannot rely on rumor, innuendo, and extraneous circumstances to create an inference of defamation."

*Willis v. United Family Life Ins.*, 487 S.E.2d 376, 379 (Ga. App. 1997) (observing that "[e]ven express mention of one's name with another accused of misconduct … does not constitute defamation, and such complaint is subject to dismissal" (citation omitted)).

Here, Plaintiff's Complaint appears to be premised on her personal belief that, as a self-identifying "Biblical Hebrew," she is of true Semitic descent and not the Jewish people. *See* Dkt. 1 at 6, 12. While she alleges that "[m]ost Jews are not Semites, and "[a]ncient Israel and Jerusalem is not the ancestral homeland of Jews," *id.* at 12, these statements are not "verified fact," as she claims, but rather her personal interpretation and understanding of the Bible. Allowing Plaintiff's claim to proceed would require litigating thousands of years of biblical history, as reasonable minds could differ as to Plaintiff's subjective assessment of the Jewish people and their Semitic origins.[10] As such, Plaintiff has not—and cannot—set forth facts sufficient to demonstrate that any statements purportedly made by Defendants were false. *See Gettner v. Fitzgerald*, 677 S.E.2d 149, 153 (Ga. App. 2009) (holding that

---

[10] The First Amendment—namely the Establishment and Free Exercise Clauses—bars judicial involvement in disputes involving issues of religion doctrine or beliefs. *See Crowder v. S. Baptist Convention*, 828 F.2d 718, 722 (11th Cir. 1987) (citing *Watson v. Jones*, 80 U.S. 679, 733 (1872) (holding that the First Amendment barred judicial resolution of a controversy over which two factions within the church should be recognized as the "true" Walnut Street Presbyterian Church of Louisville)). Thus, the Court does not have subject matter jurisdiction to adjudicate the issue of whether a "Jew" or a "Hebrew Israelite" is of true Semitic descent.

"a defamation action will lie only for a statement of fact" because "a statement that reflects an opinion or subjective assessment, as to which reasonable minds could differ, cannot be proved false").

Even if Plaintiff had adequately pled the other elements of her defamation claim, which she has not, she fails to support her outlandish demand for $12 billion in exemplary damages. Although Plaintiff's Complaint seems to be premised on allegedly defamatory statements published on X social media platform, Plaintiff later claims in her "Damages and Relief" section that she is entitled to exemplary damages "due to the aggravated nature of the slanders and libels by Defendants" and the "profound effect of such illicit behavior on the State and society as a whole." Dkt. 1 at 16 ¶ I. She also claims that her demand would "help prevent future harm to society in the interest of the state, and "help prevent similar behavior." *Id.* ¶ III.

Plaintiff's threadbare allegations that exemplary damages are warranted to deter future behavior are insufficient to support the fourth element of a defamation claim. *See Cornelius v. Bank of Am., N.A.,* No. 1:12-cv-0585-JEC, 2012 WL 4468746, at *3–4 (N.D. Ga. Sept. 10, 2012) (citations omitted) (holding that bare allegations that plaintiffs were prevented from the full enjoyment of their Property and from exercising their rights with respect to the Property, including their right to sell the Property, or to obtain mortgage loans secured by the Property were "not sufficient to properly plead special damages"). She also cannot justify her demand

by pleading, without factual support, that Defendant's unspecified defamatory statements affected "Plaintiff's character generally in trade and profession as a Hebrew advocate of Semitic persons and interests who relies upon societal inclusion for trade." Dkt. 1 at 9 ¶VI. Moreover, Defendants' alleged finances are not relevant to whether Plaintiff has pled special harm to satisfy the fourth element of a defamation claim. *See id.* at 17 ¶ VI. (claiming that "Defendants are severally very wealthy, and are capable for paying the damages demanded, which fact must be used to exact much larger damages than would be awarded against a person of ordinary circumstances").

Plaintiff's complete failure to plead the essential elements of a defamation claim or any plausible claim for relief warrant the dismissal of her Complaint. *See. Twombly*, 550 U.S. at 555  (a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

## V.    **CONCLUSION**

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint in its entirety.

Dated: January 23, 2024                Respectfully submitted,

BERMAN FINK VAN HORN P.C.

By:    */s/ Benjamin I. Fink*
Benjamin I. Fink
Georgia Bar No. 261090
bfink@bfvlaw.com

- 23 -

Jeremy L. Kahn
Georgia Bar No. 796717
jkahn@bfvlaw.com
3475 Piedmont Road, NE
Suite 1640
Atlanta, Georgia 30305
(404) 261-7711
(404) 233-1943 (Facsimile)

AIPAC

Rachel Hirsch
(*Application for Admission Pro Hac Vice Pending*)
Chief Legal Counsel, AIPAC
251 H. Street NW
Washington, D.C. 20001
Tel: (202) 246-0519
Fax: (202) 638-6349
rhirsch@aipac.org

*Attorneys for Defendant American Israel Public Affairs Committee*

## **LOCAL RULE 7.1(D) CERTIFICATE OF COMPLIANCE**

I certify that this brief has been prepared with one of the font and point

selections (14 Times New Roman) approved by the court in Local Rule 5.1(B).

BERMAN FINK VAN HORN P.C.

By:    */s/ Benjamin I. Fink*
Benjamin I. Fink
Georgia Bar No. 261090
bfink@bfvlaw.com
3475 Piedmont Road, NE
Suite 1640
Atlanta, Georgia 30305-6400
(404) 261-7711
(404) 233-1943 (Facsimile)

*Attorney for Defendant American*
*Israel Public Affairs Committee*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on January 23, 2024, I served this Defendant American Israel Public Affairs Committee's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint by electronically filing it with the Clerk of the Court using the CM/ECF system and by sending it by first-class mail to:

> Tamah Jada Clark
> Anti-Semitism Defense League
> 1880 Braselton Hwy
> Suite 118 #5018
> Lawrenceville, GA 30043
> *Pro Se*

BERMAN FINK VAN HORN P.C.

By:    */s/ Benjamin I. Fink*
        Benjamin I. Fink
        Georgia Bar No. 261090
        bfink@bfvlaw.com
        3475 Piedmont Road, NE
        Suite 1640
        Atlanta, Georgia 30305-6400
        (404) 261-7711
        (404) 233-1943 (Facsimile)

        *Attorney for Defendant American*
        *Israel Public Affairs Committee*