# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| TAMAH JADA CLARK *ex rel.* ANTI-SEMITISM DEFENSE LEAGUE,<br><br>Plaintiff,<br><br>v.<br><br>X CORP., WORLD JEWISH CONGRESS, AMERICAN ISRAEL PUBLIC AFFAIRS COMMITTEE<br><br>Defendants. | Civil Action No. 1:23-cv-05840-JPB |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT X CORP.'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# **TABLE OF CONTENTS**

Page

INTRODUCTION ......................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ............................................2

I.   The Complaint ...............................................................................................2

II.  X's Terms of Service, Rules, and Hateful Conduct Policy ...........................3

III. Relevant Procedural History.........................................................................5

LEGAL STANDARD............................................................................................6

ARGUMENT AND CITATION OF AUTHORITY ..............................................7

I.   Plaintiff's Complaint Should Be Dismissed for Failure to State a
     Claim..............................................................................................................7

     A.   Section 230 Bars Plaintiff's Claim......................................................7

          1.   X Corp. is an "interactive computer service" provider...............9

          2.   Plaintiff's content posted on X is information provided
               by another "information content provider."..............................9

          3.   Plaintiff's claim seeks to treat X Corp. as a "publisher." .........11

     B.   The First Amendment Bars Plaintiff's Claim .....................................13

     C.   Plaintiff Fails to State a Plausible Claim for Defamation..................14

          1.   California law applies to Plaintiff's claim against X Corp.......14

          2.   Plaintiff's claim is barred by X's Terms...................................15

          3.   Plaintiff fails to plausibly allege a defamation claim. .............18

II.  Federal Rule of Civil Procedure 12(b)(5) Requires Dismissal of
     Plaintiff's Complaint Because Plaintiff Failed to Properly Serve X
     Corp. ............................................................................................................21

III. The Court Should Not Grant Leave to Amend.............................................24

CONCLUSION .....................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Albra v. Advan, Inc.*,
  490 F.3d 826 (11th Cir. 2007)..........................................................................7

*Almeida v. Amazon.com, Inc.*,
  456 F.3d 1316 (11th Cir. 2006)................................................................8, 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................6

*Austin v. Lyft, Inc.*,
  21-CV-09345-JCS, 2021 WL 6617452 (N.D. Cal. Dec. 13, 2021)....................24

*Bass v. Facebook, Inc.*
  394 F.Supp.3d 1024 (N.D. Cal. 2019) ...........................................................17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................6

*Burger King Corp. v. Weaver*,
  169 F.3d 1310 (11th Cir. 1999)......................................................................25

*Cooper v. Meridian Yachts, Ltd.*,
  575 F.3d 1151 (11th Cir. 2009)......................................................................15

*Cox v. Twitter, Inc.*,
  No. CV 2:18-2573-DCN-BM, 2019 WL 2513963 (D.S.C. Feb. 8, 2019)...........17

*Darnaa, LLC v. Google Inc.*,
  236 F. Supp. 3d 1116, 1123 & n.3 (N.D. Cal. 2017) .........................................17

*Davis v. Raycom Media, Inc.*,
  No. 1:12-CV-106 (TQL), 2013 WL 12320413 (M.D. Ga. Aug. 7, 2013)...........11

*Dowbenko v. Google Inc.*,
  582 F. App'x 801 (11th Cir. 2014) ....................................................... 8, 9, 10, 11

*Escudero v. Fed. Nat'l Mortg. Ass'n*,
  No. 2:14-CV-20-WCO, 2014 WL 12544771 (N.D. Ga. Apr. 3, 2014)..............23

*e-ventures Worldwide, LLC v. Google, Inc.*,
  No. 214CV646FTMPAMCM, 2017 WL 2210029 (M.D. Fla. Feb. 8, 2017)14, 21

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
  521 F.3d 1157 (9th Cir. 2008)....................................................................8, 12

*Hassell v. Bird*,
  5 Cal. 5th 522 (2018).......................................................................................8

*Hopkins v. Doe*,
   No. 11-cv-100, 2011 WL 5921446 (N.D. Ga., Nov. 28, 2011) .................... 11, 25

*Illoominate Media, Inc. v. CAIR Found.*,
   No. 19-CIV-81179-RAR, 2019 WL 13168767 (S.D. Fla. Nov. 19, 2019) 7, 8, 13,
   15, 17

*Ins. House, Inc. v. Ins. Data Processing, Inc.*,
   No. 1:07-CV-0286-BBM, 2008 WL 11333547 (N.D. Ga. Nov. 19, 2008).........14

*Jones v. Twitter, Inc.*,
   No. CV RDB-20-1963, 2020 WL 6263412 (D. Md. Oct. 23, 2020) ...................12

*Kahn v. Bower*,
   232 Cal. App. 3d 1599, 1612 n.5 (1991)...........................................................20

*Lewis v. YouTube, LLC*,
   244 Cal. App. 4th 118 (2015)...........................................................................16

*Mac Isaac v. Twitter, Inc.*
   557 F. Supp. 3d 1251 (S.D. Fla. 2021) ..............................................................14

*Mallory v. DHI Mortg. Co.*,
   No. 1:18-CV-4579-WMR, 2018 WL 9917672 (N.D. Ga. Nov. 29, 2018).........23

*McCall v. Zotos*,
   No. 22-11725, 2023 WL 3946827 (11th Cir. June 12, 2023)................................7

*McDermott v. Stacks Publ'g Grp.*,
   No. 1:18-cv-05767-ELR, 2019 WL 13244544 (N.D. Ga. Apr. 12, 2019)...........22

*McGarry v. Univ. of San Diego*,
   154 Cal. App. 4th 97 (2007)..............................................................................21

*Med. Marijuana, Inc. v. ProjectCBD.com*,
   46 Cal. App. 5th 869 (2020)..............................................................................21

*Mezey v. Twitter, Inc.*,
   No. 1:18-cv-21069-KMM, 2018 WL 5306769 (S.D. Fla. July 19, 2018)9, 10, 11,
   12

*Moody v. NetChoice*,
   144 S. Ct. 478 (2023) ..........................................................................................9

*Morton v. Twitter, Inc.*,
   No. CV 20-10434-GW-JEMX, 2021 WL 1181753 (C.D. Cal. Feb. 19, 2021).....9

*Murphy v. Twitter, Inc.*,
   60 Cal. App. 5th at 29-30 (2021) ............................................................... 12, 17

*Nationwide Logistics, Inc. v. Condor Transp., Inc.*,
   270 Ga. App. 277 (2004)....................................................................................15

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009)....................................................................8

*NetChoice, LLC v. Att'y Gen., Fla.*,
   34 F.4th 1196 (11th Cir. 2022)....................................................... 9, 13, 14

*O'Handley v. Padilla*,
   579 F. Supp. 3d 1163 (N.D. Cal. 2022) ...............................................14

*O'Handley v. Weber*,
   62 F.4th 1145 (9th Cir. 2023)..............................................................14

*Pouyeh v. Bascom Palmer Eye Inst.*,
   613 F. App'x 802 (11th Cir. 2015) .........................................................7

*Smith v. DiFrancesco*,
   341 Ga. App. 786, 787–88 (2017).......................................................18

*StopLoss Specialists, LLC v. VeriClaim, Inc.*,
   340 F. Supp. 3d 1334 (N.D. Ga. 2018) ...............................................18

*Swain v. Weinstein*,
   No. CV620 082, 2020 WL 8575175 (S.D. Ga. Oct. 23, 2020)...........11

*Taus v. Loftus*,
   40 Cal. 4th 683 (2007)........................................................................18

*Trump v. Twitter Inc.*,
   602 F. Supp. 3d 1213 (N.D. Cal. 2022) ..............................................17

*Yuksel v. Twitter, Inc.*,
   2022 WL 16748612 (N.D. Cal. Nov. 7, 2022)....................................11

**Statutes**

47 U.S.C. § 230...................................... 1, 2, 7, 8, 9, 10, 11, 12, 13, 25

47 U.S.C. § 230(c)(1).................................................... 7, 9, 10, 11

47 U.S.C. § 230(e)(3)..............................................................7, 8

47 U.S.C. § 230(f)(2)................................................................9

47 U.S.C. § 230(f)(3)...............................................................10

Cal. Code of Civ. P. § 415.50 ...................................................25

Cal. Code of Civ. P. § 416.10 ...................................................24

O.C.G.A. § 9-11-4(e) ..............................................................23

O.C.G.A. § 14-2-504(b)............................................................23

**Rules**

Federal Rule of Civil Procedure 12(b)(5) ..................................................... 2, 22, 25

Federal Rule of Civil Procedure 12(b)(6) .................................................................1

Federal Rule of Civil Procedure 15(a) .....................................................................25

Federal Rule of Civil Procedure 4(e)(1) ..................................................................23

Federal Rule of Civil Procedure 4(h)........................................................................2, 22

Federal Rule of Civil Procedure 4(h)(1)(A) ..................................................... 23, 24

Federal Rule of Civil Procedure 4(h)(1)(B)............................................................23

Local Rule 83.1(E)(2)(H)..........................................................................................22

## INTRODUCTION

Federal Rule of Civil Procedure 12(b)(6) compels dismissal of Plaintiff's Complaint. Plaintiff alleges she was defamed because X Corp., purportedly in cooperation with defendants World Jewish Congress ("WJC") and American Israel Public Affairs Committee ("AIPAC"), removed or concealed content Plaintiff published on X (X Corp.'s social media platform previously branded as Twitter), and "falsely charged" it with violating X Corp.'s Hateful Conduct Policy.

Plaintiff's defamation claim fails for four independent reasons:

*First*, section 230 of the Communications Decency Act of 1996, 47 U.S.C. section 230 ("Section 230"), bars Plaintiff's claim. Section 230 immunizes X Corp. from claims, such as Plaintiff's, which seek to hold it liable for its content moderation decisions, including decisions to remove content from its platform.

*Second*, Plaintiff's claim is barred by the First Amendment, which protects X Corp.'s editorial decisions about the speech it allows to be disseminated on its private social media platform, who may make that speech, and how X Corp. enforces its content moderation policies.

*Third*, Plaintiff fails to plausibly allege her claim. Plaintiff's claim is barred by X's Terms of Service, which provide that X Corp. may "remove or . . . limit distribution or visibility" of any content on X at its "sole discretion" and "without liability." Plaintiff also fails to plead facts that, if true, would establish any of the

elements of a defamation claim.

Federal Rule of Civil Procedure 12(b)(5) also requires dismissal of Plaintiff's Complaint, because Plaintiff's attempts at serving X Corp.—by mailing the Summons and Complaint to X Corp.'s corporate address and making a post on X— did not comply with the requirements for serving a corporation under Federal Rule of Civil Procedure 4(h).

Because Section 230, the First Amendment, and the Terms of Service bar Plaintiff's claim as a matter of law, leave to amend should not be granted. Accordingly, X Corp. respectfully requests this Court grant X Corp.'s motion to dismiss with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   The Complaint

Plaintiff alleges that, between November 3, 2023 and November 8, 2023, X Corp., WJC, and/or AIPAC ("Defendants") made "twenty malicious public notices of 'Hateful Conduct'" by Plaintiff. ECF No. 1 ("Compl.") at 5, 9-10. The only allegedly defamatory statement pleaded by Plaintiff, however, is a summary of a rule in X Corp.'s Hateful Conduct Policy: "You may not promote violence against, threaten, or harass other people on the basis of race, ethnicity, national origin, sexual orientation, gender, gender identity, religious affiliation, age, disability, or serious disease." *Id.* at 5-6. Plaintiff also alleges Defendants "concealed or removed" content she "published to [the] 'X' social media platform." *Id.* at 5-7.

Plaintiff alleges that because "all 20 charges of 'Hateful Conduct' involved Jewish organizations . . . the world can only perceive this to mean PLAINTIFF is anti-Jewish" *Id.* at 8. She alleges Defendants "branded" her with "The Mark" of anti-Semitism, which affects her "character generally in trade and profession as a Hebrew advocate of Semitic persons." *Id.* at 9. Plaintiff also alleges that the "false charges of 'Hateful Conduct' imply that [her] Textbook, Notice, Second Notice, and Website," which she alleges she posted on X (*id.* at 7), "are slanderous, false, and ill-intended to incite violate and promote 'hate crime.'" *Id.* at 9. Plaintiff further alleges the removal or concealment of her content demonstrates Defendants' "aggravated, calculated intent to defame and injure PLAINTIFF with evil motive, actual malice, and deliberate oppression." *Id.* at 7.

Plaintiff asserts a defamation claim against Defendants, purportedly on behalf of "Anti-Semitism Defense League™," which she alleges is "an unincorporated common-law 'entity' used to facilitate the trade of PLAINTIFF." *Id.* at 4. Plaintiff seeks no actual damages, but seeks $12 billion in exemplary damages. *Id.* at 16-17.

## II.   X's Terms of Service, Rules, and Hateful Conduct Policy

Plaintiff alleges she is a user of X, the social media platform provided by X Corp., using the handle "@TheADL_dot_org." Compl. at 7 ("published to 'X' social media platform"); *see id.* at 18 (signature block). Plaintiff created her X account in August 2023. *See* Request for Judicial Notice ("RJN"), Ex. 4 ("Joined August

2023").[1]

In creating her account, Plaintiff necessarily agreed to X's Terms of Service ("Terms"). *Id.*, Ex. 5 ("By signing up, you agree to the Terms of Service and Privacy Policy"), Ex. 1 at 1 ("By using the Services, you agree to be bound by these Terms."). By continuing to use X, Plaintiff agreed to be bound by the Terms. *Id.*, Ex. 1 at 3 ("We may revise these Terms . . . By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms."), Ex. 2 at 4 (same).

The version of the Terms in place in November 2023 when Plaintiff was allegedly defamed gives X Corp. the right to "remove or . . . limit distribution or visibility" of content on Twitter "without liability to [the user]" and to create "limits on use" at its "sole discretion." *Id.*, Ex. 2 at 2. Those Terms also include X Corp.'s disclaimer of liability for the "deletion" of content, and a limitation of liability clause which (a) expressly applies to any theory of liability, including tort; and (b) prohibits

_____

[1] X Corp.'s RJN, filed concurrently, seeks judicial notice of the version of the Terms to which Plaintiff agreed when she created her X account in August 2023 (Ex. 1), and the version of the Terms in effect in November 2023 when she alleged defamation occurred (Ex. 2). X Corp. also seeks judicial notice of its Hateful Conduct Policy that was in place when Plaintiff was allegedly defamed (Ex. 3), and which is referenced and quoted in the Complaint (Compl. at 8). Finally, X Corp. seeks judicial notice of a true and correct copy of the sign-up page for new X account holders as it existed in August 2023, when Plaintiff created her X account (Ex. 4), and of Plaintiff's X account webpage referenced in the Complaint, which shows she created her X account in August 2023 (Ex. 5).

liability for indirect, incidental, special, consequential, or punitive damages related to a user's "access to or use of or inability to access or use the services." *Id.*, Ex. 2 at 4; *see also id.*, Ex. 1 at 3. The Terms also state that the "laws of the State of California, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you [*i.e.*, Plaintiff] and us [*i.e.*, X Corp.]." *Id.*, Ex. 2 at 4; *id.*, Ex. 1 at 3.

X's Rules (the "Rules," which, with the Terms and the Privacy Policy comprise the User Agreement) "outline conduct that is prohibited" by users on X. *Id.*, Ex. 1 at 2; Ex. 2 at 2. X's Hateful Conduct Policy was part of the Rules in effect in November 2023, when Plaintiff alleges she was defamed. *Id.*, Ex. 3. That policy provides that users "may not directly attack other people on the basis of race, ethnicity, national origin, caste, sexual orientation, gender, gender identity, religious affiliation, age, disability, or serious disease." *Id.* at 1. It also provides, "[u]nder this policy, we take action against behavior that targets individuals or an entire protected category with hateful conduct, as described above." *Id.* at 2. The policy includes a "list of potential enforcement options for content that violates this policy," including "[m]aking content less visible on X," "[r]equiring Post removal," and "[s]uspending accounts that violate our Hateful Profile policy." *Id.*

## III.   Relevant Procedural History

Plaintiff filed the Complaint on December 19, 2023. On January 21, 2024,

Plaintiff filed an "Affirmation of Service and Notice of Default" (ECF No. 18), stating Plaintiff attempted to serve X Corp. the summons and Complaint by mailing a copy via Certified Mail to X Corp.'s corporate address in San Francisco, California and by making a post on X which included the X handle "@X" and included an image of the Summons. *Id.* at 5, 25-26.[2]

## <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citation omitted) (*Iqbal*). "[P]lausibility" requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable." *Id.* at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"[A]lthough we are to give liberal construction to the pleadings of pro se litigants, we nevertheless have required them to conform to procedural rules." *Pouyeh v. Bascom Palmer Eye Inst.*, 613 F. App'x 802, 806 (11th Cir. 2015) (quoting

---

[2] On February 8, 2024, Plaintiff filed a "Motion for Default Judgement [sic]" (ECF No. 20), to which X Corp. is responding in a concurrently filed response in opposition.

*Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007)).

<u>**ARGUMENT AND CITATION OF AUTHORITY**</u>

**I.    Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim**

    A.    <u>Section 230 Bars Plaintiff's Claim</u>

As a threshold legal matter, Section 230 bars Plaintiff's defamation claim because it seeks to hold X Corp. liable for its "traditional editorial functions," including its decisions about what content users may post on X, its social media platform. 47 U.S.C. §§ 230(c)(1), 230(e)(3); *see Illoominate Media, Inc. v. CAIR Found.*, No. 19-CIV-81179-RAR, 2019 WL 13168767, at *3 (S.D. Fla. Nov. 19, 2019), *aff'd on other grounds sub nom. Illoominate Media v. CAIR Florida, Inc.*, 841 F. App'x 132 (11th Cir. 2020) ("Under [Section 230], Twitter cannot be held liable for its decision to exercise traditional editorial functions, such as moderating content on its platform.") (dismissing claims alleging defendant conspired with Twitter where defendant allegedly "reported [plaintiff's] account and convinced Twitter to ban [plaintiff]"); *McCall v. Zotos*, No. 22-11725, 2023 WL 3946827, at *3 (11th Cir. June 12, 2023) ("Lawsuits seeking to hold a service provider . . . liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content—are barred.").

Under Section 230(c)(1), "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Section 230(e)(3) provides, aside from

exceptions not relevant here, "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."

The Eleventh Circuit has construed Section 230 immunity "broad[ly]." *Dowbenko v. Google Inc.*, 582 F. App'x 801, 804 (11th Cir. 2014) (citing *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006)). Accordingly, courts apply Section 230 to "protect websites not merely from ultimate liability, but [also] from having to fight costly and protracted legal battles." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) ("*Roommates*"); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-255 (4th Cir. 2009) (Section 230 provides "immunity from suit rather than a mere defense to liability") (citation omitted). Further, given its "capacious language," "attempted end-run[s] around section 230" should be rejected. *See Hassell v. Bird*, 5 Cal. 5th 522, 545 (2018); *Illoominate Media*, 2019 WL 13168767, at *3 (rejecting attempted "end-run around [Section 230's] explicit prohibition that Twitter cannot be held liable for its decision to moderate content on its platform").

Here, all three prongs of the Section 230 analysis are met: (1) X Corp. is an "interactive computer service" provider; (2) Plaintiff's content is "information provided by another information provider"; and (3) Plaintiff's allegations treat X Corp. as a "publisher" of that content. *See* 47 U.S.C. § 230 (c)(1); *Dowbenko*, 582 F. App'x at 804-05. Section 230 therefore provides X Corp. immunity from this suit.

       *1.    X Corp. is an "interactive computer service" provider.*

Section 230 broadly defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer . . . service." 47 U.S.C. § 230(f)(2). As courts unanimously have held, social media platforms, including Twitter, are "interactive computer service providers." *NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1220 (11th Cir. 2022), *cert. denied in part,* 144 S. Ct. 69 (2023)*, granted in part sub nom. Moody v. NetChoice*, 144 S. Ct. 478 (2023) ("'interactive computer services'—like social-media platforms"); *Mezey v. Twitter, Inc.*, No. 1:18-cv-21069-KMM, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) ("Twitter . . . is an interactive computer service."); *Morton v. Twitter, Inc.*, No. CV 20-10434-GW-JEMX, 2021 WL 1181753, at *3 (C.D. Cal. Feb. 19, 2021) ("Twitter provides the prototypical service entitling it to protections of [Section 230]" and "[e]very decision the Court has seen to consider the issue has treated Twitter as an interactive computer service provider, even at the motion to dismiss stage.") (citation omitted). Plaintiff's allegations require the same conclusion. Compl. at 7 (referring to "'X' social media platform"). Thus, X Corp. is an "interactive computer service" provider within the meaning of the first prong of the Section 230 analysis. 47 U.S.C. § 230(c)(1).

       *2.    Plaintiff's content posted on X is information provided by another "information content provider."*

 Section 230 defines an "information content provider" as "any person or

entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Content posted by third-party users of the X social media platform is "information provided by another information content provider" within in the meaning of the second prong of the Section 230 analysis. *See* 47 U.S.C. § 230(c)(1); *Mezey*, 2018 WL 5306769, at *1 ("Plaintiff is the information content provider as he created the relevant content associated with his Twitter account."); *Dowbenko*, 582 F. App'x at 804 (Section 230 has been applied to provide immunity from "any cause of action that would make service providers liable for information originating with a third-party user of the service.") (citing *Almeida*, 456 F.3d at 1321).

Plaintiff's defamation claim against X Corp. is premised on X Corp.'s alleged moderation of content "PLAINTIFF furnished . . . and subsequently published to 'X' social media platform," which it alleges X Corp. "concealed or removed" and "falsely charged" as violating its Hateful Conduct Policy. Compl. at 5, 7, 9. In other words, Plaintiff seeks to hold X Corp. liable for its decisions regarding "information provided by another information content provider"—i.e., Plaintiff. *See Dowbenko*, 582 F. App'x. 801 (content "authored and posted" by platform users is "information provided by another content provider," regardless of the fact that Google manipulated its visibility); *Yuksel v. Twitter, Inc.*, 2022 WL 16748612, at *3 (N.D.

Cal. Nov. 7, 2022) (Plaintiff "seeks to hold Twitter liable for decisions regarding 'information provided by another information content provider'—that is, information that he, rather than Twitter, provided.").[3] Thus, the second prong of the Section 230 analysis is satisfied. 47 U.S.C. § 230(c)(1).

### 3.   Plaintiff's claim seeks to treat X Corp. as a "publisher."

Section 230's third prong is satisfied because Plaintiff seeks to impose liability on X Corp. for its moderation of Plaintiff's content posted on its social media platform—*i.e.*, protected "publishing" activity. 47 U.S.C. § 230(c)(1); *see Mezey*, 2018 WL 5306769, at *1 (Section 230's third prong satisfied where "Plaintiff seeks to hold Twitter 'liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content.'") (quoting *Roommates*, 521 F.3d at 1170-71 ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post

---

[3] To the extent Plaintiff seeks to hold X Corp. liable for certain statements by WJC and AIPAC on X, (*see* Compl. at 10 ("done and directed to be done . . . in the name of [WJC] and [AIPAC]")), such claims also are barred by Section 230. *Swain v. Weinstein,* No. CV620 082, 2020 WL 8575175, at * 2 (S.D. Ga. Oct. 23, 2020), *report and recommendation adopted*, No. CV620 082, 2021 WL 620963 (S.D. Ga Feb. 17, 2021) (holding immunity applied because the defendant was not responsible for the relevant third-party posts); *Davis v. Raycom Media, Inc.*, No. 1:12-CV-106 (TQL), 2013 WL 12320413, at *3 (M.D. Ga. Aug. 7, 2013) ("any claims against the Defendant for reader-posted comments to news stories are barred"); *Hopkins v. Doe*, No. 11-cv-100, 2011 WL 5921446, at *2 (N.D. Ga., Nov. 28, 2011) (claims based on defendant's failure to police thirty-party conduct on its website were barred by Section 230).

online is perforce immune under Section 230.")).

On its face, Plaintiff's defamation claim is premised on X Corp.'s alleged "conceal[ment] or remov[al]" of Plaintiff's content and "charging" that it violates X Corp.'s Hateful Conduct Policy. *See* Compl. at 5, 7. X Corp.'s decisions about whether to limit visibility or remove content posted by third-party users on X, and whether third-party content violates its policies, are publishing conduct protected by Section 230. *See*, *e.g.*, *Mezey*, 2018 WL 5306769, at *1; *Jones v. Twitter, Inc*., No. CV RDB-20-1963, 2020 WL 6263412, at *2 (D. Md. Oct. 23, 2020) (Section 230 barred defamation claim, among others, premised on plaintiff's account suspension for "violating Twitter's Terms of Service, specifically the Twitter Rules against hateful conduct" because such claims "clearly seek to hold Twitter liable as a publisher of third-party content, as [it] relates to Twitter's decision not to publish Plaintiff's content"); *Murphy v. Twitter, Inc*., 60 Cal. App. 5th at 29-30 (2021) (Section 230's third prong satisfied because "allegations that Twitter 'enforced its Hateful Conduct Policy in a discriminatory and targeted manner' against [plaintiff] . . . by removing her tweets and suspending her account amount to attacks on Twitter's interpretation and enforcement of its own general policies," which are protected publishing activities). The third prong of the Section 230 analysis is satisfied.

Because all three prongs of the Section 230 analysis are met, Section 230

immunizes X Corp. from Plaintiff's defamation claim, which seeks to hold X Corp. liable for its "traditional editorial functions," including its decisions about what content Plaintiff may post on its platform. *See Illoominate Media*, 2019 WL 13168767, at *3. Accordingly, the Complaint should be dismissed with prejudice.

B.   The First Amendment Bars Plaintiff's Claim

Plaintiff's claim also is barred by the First Amendment, which protects X Corp.'s editorial decisions about what content is disseminated on its platform, who may disseminate that content, and how X Corp. enforces its content-moderation policies. "Social-media platforms exercise editorial judgment that is inherently expressive. When platforms choose to remove users or posts, deprioritize content in viewers' feeds or search results, or sanction breaches of their community standards, they engage in First-Amendment-protected activity." *NetChoice, LLC*, 34 F.4th 1196 at 1213. As the Eleventh Circuit reasoned:

> More particularly, when a platform removes or deprioritizes a user or post, it makes a judgment about whether and to what extent it will publish information to its users—a judgment rooted in the platform's own views about the sorts of content and viewpoints that are valuable and appropriate for dissemination in its site.

*Id.* at 1210. Other courts similarly have recognized that "[l]ike a newspaper or a news network, [X Corp.] makes decisions about what content to include, exclude, moderate, filter, label, restrict or promote, and those decisions are protected by the First Amendment." *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186-88 (N.D. Cal. 2022), *aff'd on other grounds sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir.

2023) (dismissing on First Amendment grounds claims based in part on Twitter account suspension); *Mac Isaac v. Twitter, Inc.* 557 F. Supp. 3d 1251, 1261 (S.D. Fla. 2021) (finding that X Corp. "has a First Amendment right to decide what to publish and what not to publish" (internal quotation marks omitted); *see also e-ventures Worldwide, LLC v. Google, Inc.*, No. 214CV646FTMPAMCM, 2017 WL 2210029, at *4 (M.D. Fla. Feb. 8, 2017) (holding Google's decisions to remove content is protected because the "First Amendment protects these decisions, whether they are fair or unfair, or motivated by profit or altruism.").

Because Plaintiff seeks to hold X Corp. liable for its editorial decisions about what content is disseminated on its private social media platform and for its enforcement of its content moderation policies (Compl. at 5, 7), the First Amendment therefore bars Plaintiff's claim. *See, e.g.*, *NetChoice*, 34 F.4th at 1210.

C.   Plaintiff Fails to State a Plausible Claim for Defamation

1.   *California law applies to Plaintiff's claim against X Corp.*

"A federal court sitting in diversity applies the conflict-of-law rules of the forum state." *Ins. House, Inc. v. Ins. Data Processing, Inc.*, No. 1:07-CV-0286-BBM, 2008 WL 11333547, at *6 (N.D. Ga. Nov. 19, 2008) (citation omitted). Under Georgia choice-of-law rules, "in the absence of contrary public policy, [Georgia] courts normally will enforce a contractual choice of law provision." *Nationwide Logistics, Inc. v. Condor Transp., Inc.*, 270 Ga. App. 277, 280 (2004). Further, Georgia courts enforce broad choice-of-law provisions that encompass tort claims.

*Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009) (affirming district court's application of contractual choice of law provision to tort claims).

In agreeing to X's Terms, Plaintiff agreed that California law "will govern . . . any dispute that arises between" Plaintiff and X Corp. RJN, Ex. 2 at 4; *id.*, Ex. 1 at 3. This language "is clearly meant to be read broadly" to encompass tort claims like Plaintiff alleges here. *Cooper*, 575 F.3d at 1162; *see Illoominate Media*, 841 F. App'x at 137 (where tort was alleged, noting that "California law . . . governs Twitter's Terms of Service"). Accordingly, California law governs Plaintiff's claim.

### 2.     Plaintiff's claim is barred by X's Terms.

Plaintiff's claim is barred because it arises from X Corp.'s alleged determination that Plaintiff's content violated X Corp.'s Hateful Conduct Policy and its concealment or removal of that content—all which X Corp. is expressly permitted to do by the Terms to which Plaintiff agreed when creating its X account and by using X.

The Terms give X Corp. the right to "create limits on use . . . at [its] sole discretion at any time." RJN Ex. 2 at 2 (§ 4 "Using the Services"); Ex. 1 at 2 (same). The Terms also give X Corp. the right to "remove or refuse to distribute any Content," and "limit distribution or visibility of any Content . . . without liability . .

. ."[4] *Id.* The Terms therefore expressly authorized X Corp. to take the alleged content moderation decisions Plaintiff challenges.

Likewise, in the Terms X Corp. disclaimed "all responsibility and liability for . . . the deletion of . . . any Content." *Id.,* Ex. 1 at 2; *id.*, Ex. 2 at 4. The Terms also provide:

> TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, [X CORP.] SHALL NOT BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTLY OR PUNITIVE DAMAGES . . . , RESULTING FROM . . . **YOUR . . . USE OF OR INABILITY TO ACCESS OR USE THE SERVICES.**

*Id.*, Ex. 2 at 4; Ex. 1 at 3 (same). These provisions prevent Plaintiff from holding X Corp. liable for the moderation decisions Plaintiff challenges.

"Limitation of liability clauses 'have long been recognized as valid in California'" and may be used at the pleading stage to reject a party's claims. *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125 (2015) (enforcing limitation of liability clause and affirming sustaining of demurrer). These clauses are particularly "appropriate when one party is offering a service for free to the public." *Id.*; *see also Murphy*, 60 Cal. App. 5th at 36 (X Corp., like other "service providers that offer free services to Internet users may have a legitimate commercial need to limit their

---

[4] Consistent with this provision, the Hateful Conduct Policy sets forth certain of X Corp.'s "enforcement options for content that violates this policy," including "[m]aking content less visible on X," "[r]equiring Post removal," and "[s]uspending accounts that violate our Hateful Profile policy." RJN, Ex. 3 at 2.

liability"). Furthermore, courts routinely enforce online platforms' limitation of liability clauses in suits arising out of conduct protected by the terms of service. *See, e.g.*, *Darnaa, LLC v. Google Inc.*, 236 F. Supp. 3d 1116, 1123 & n.3 (N.D. Cal. 2017) (enforcing YouTube's limitation of liability clause and dismissing complaint), *aff'd sub nom.* 756 F. App'x 674 (9th Cir. 2018); *Bass v. Facebook, Inc.* 394 F.Supp.3d 1024, 1037 (N.D. Cal. 2019) (enforcing Facebook's limitation-of-liability clause).

In short, the Terms' disclaimers and limitations on liability are enforceable on Plaintiff, and protect X Corp. from precisely this type of lawsuit, which challenges X Corp's content moderation decisions on X. *See Illoominate Media,* 841 F. App'x at 137 (noting, "[i]n fact, Twitter's Terms of Service . . . allow Twitter to ban [plaintiff] from its platform for any reason at all"); *Trump v. Twitter Inc.*, 602 F. Supp. 3d 1213, 1227 (N.D. Cal. 2022) (X Corp.'s User Agreement "gave Twitter contractual permission to act as it saw fit with respect to any account or content for any or no reason"); *Cox v. Twitter, Inc.*, No. CV 2:18-2573-DCN-BM, 2019 WL 2513963, at *4 (D.S.C. Feb. 8, 2019), *report and recommendation approved*, No. 2:18-CV-2573 DCN, 2019 WL 2514732 (D.S.C. Mar. 8, 2019) (Plaintiff "failed to state a claim, as [the Terms] clearly provide[] that the Defendant reserves the right to remove content that it deems to have violated the User Agreement," including "[t]he Twitter Rules, which . . . prohibit postings . . . expressing hate . . . based on

religious affiliation").

Because Plaintiff's claim is barred by the Terms, the Complaint should be dismissed with prejudice.

### 3.    *Plaintiff fails to plausibly allege a defamation claim.*

The elements of a defamation claim are: "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage."[5] *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (citation omitted).  Plaintiff fails to plausibly allege any of these elements.

Plaintiff alleges it was defamed by "libels"—twenty purported "public notices" "published" on Twitter, which "falsely charged" that Plaintiff's content violated X Corp.'s Hateful Conduct Policy.[6] Compl. at 5-6. Plaintiff further alleges that because "all 20 charges of 'Hateful Conduct' involved Jewish organizations and persons, the world can only perceive this to mean PLAINTIFF is anti-Jewish, and

---

[5] Similarly, under Georgia law the elements of a defamation claim are: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *StopLoss Specialists, LLC v. VeriClaim, Inc.*, 340 F. Supp. 3d 1334, 1346 (N.D. Ga. 2018) (citing *Smith v. DiFrancesco*, 341 Ga. App. 786, 787–88 (2017), *cert. denied* (Dec. 11, 2017)).

[6] Plaintiff also alleges in conclusory fashion that X Corp. "slander[ed]" her "orally" (Compl. at 1-2), but she does not identify *any* alleged oral statement by X Corp. To the extent Plaintiff purports to premise her defamation claim on any slander, she fails to state a claim where the only alleged defamatory statement was alleged to be "published" on X. Compl. at 5-6.

well as anti-Semitic." *Id.* at 8 (§ IV). However, the only allegedly defamatory statements Plaintiff can muster is a summary of a rule in X Corp.'s Hateful Conduct Policy: "You may not promote violence against, threaten, or harass other people on the basis of race, ethnicity, national origin, sexual orientation, gender, gender identity, religious affiliation, age, disability, or serious disease."[7] *Id.* at 2, 5-6.

These allegations fall well short of plausibly alleging X Corp. publicized any false or defamatory statement, let alone did so with the requisite intent for a defamation claim. The only allegedly defamatory statement identified by Plaintiff is a truthful summary of a X Rule—that neither Plaintiff nor any other user is permitted to "promote violence against, threaten, or harass other people on the" listed bases.[8]

Moreover, although Plaintiff repeatedly pleads in conclusory fashion that, for example, "DEFENDANTS implied PLAINTIFF is guilty of anti-Semitism" Compl. 6, she does not plead X Corp. made any such statement. Under California law,

---

[7] The statement seems to summarize X Corp.'s Hateful Conduct Policy, which provides: "You may not directly attack other people on the basis of race, ethnicity, national origin, caste, sexual orientation, gender, gender identity, religious affiliation, age, disability, or serious disease." RJN, Ex. 3 at 1 (Overview).

[8] Additionally, "[i]n a defamation action the threshold question is whether the statement on which a plaintiff's claim is based, specifically refers to, or is 'of and concerning'" the plaintiff. *Yow v. Nat'l Enquirer, Inc.*, 550 F. Supp. 2d 1179, 1184 (E.D. Cal. 2008). Plaintiff fails to allege how a general statement of X's Rules specifically refers to or is "of and concerning" Plaintiff. Georgia law applies the same standard. *See Fiske v. Stockton*, 320 S.E.2d 590, 592–93 (Ga. Ct. App. 1984) ("If the words used really contain no reflection on any particular individual, no averment or innuendo can make them defamatory.").

"words constituting an alleged libel must be *specifically identified, if not pleaded verbatim*, in the complaint."[9] *Kahn v. Bower*, 232 Cal. App. 3d 1599, 1612 n.5 (1991) (emphasis added). Plaintiff's allegations of an unidentified, implied statement not specifically attributed to anyone are insufficient to allege a libel, particularly as she contends the purported statements are publicly available.[10] Compl. at 9 ("Twenty malicious public notices"); *Med. Marijuana, Inc. v. ProjectCBD.com*, 46 Cal. App. 5th 869, 894 (2020) ("plaintiffs have a written copy of the article published by the defendants; there is simply no justification for them to set forth in their complaint only the 'substance' of the statements that they claim are defamatory, instead of the *actual statements*") (emphasis added).

Plaintiff's attempt at alleging defamation *per se* based on the statements described above (Compl. at 8-9 (alleging claims "are actionable *per* se") fares no better. A statement can be defamatory *per se* only if a listener can "recognize the defamatory meaning without knowledge of specific facts and circumstances, extrinsic to the publication, which are not matters of common knowledge rationally

---

[9] Georgia law applies the same pleading standard. *See Sarver v. Jackson*, No. CIV.A. 2:08-CV-0077, 2008 WL 4911836, at *4 (N.D. Ga. Nov. 13, 2008), *aff'd*, 344 F. App'x 526 (11th Cir. 2009) ("general allegations, without identifying specific statements, are insufficient to state a claim for slander, libel or defamation").

[10] Likewise, while Plaintiff alleges X Corp. "concealed or removed" her content (Compl. at 7), these allegations of content moderation by X Corp. do not and cannot constitute allegations of a publicized defamatory statement.

attributable to all reasonable persons." *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 112 (2007) (cleaned up). Not only would a listener not "recognize the defamatory meaning" of the only allegedly defamatory statement—a summary of a Twitter Rule—the statement also "would be protected because the statement is true." *See e-ventures Worldwide*, 2017 WL 2210029, at *4 ("But even if Google had published a press release that e-venutures' websites were violating Google's guidelines, that publication would be protected because the statement is true.").

In sum, Plaintiff fails to plausibly allege the elements of a defamation claim. Plaintiff's Complaint against X Corp. therefore should be dismissed.[11]

## II.   Federal Rule of Civil Procedure 12(b)(5) Requires Dismissal of Plaintiff's Complaint Because Plaintiff Failed to Properly Serve X Corp.

Plaintiff's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. Plaintiff failed to properly

---

[11] Finally, to the extent Tamah Jada Clark purports to assert her claim on behalf of the Anti-Semitism Defense League, her claim is procedurally improper because that allegedly "unincorporated common-law 'entity'" cannot appear *pro se*, and must be represented by an attorney. *See* Local Rule 83.1(E)(2)(H) ("if the client is a corporation or organization, it may only be represented by an attorney, who must sign all pleadings and papers submitted to the Court"); *McDermott v. Stacks Publ'g Grp.,* No. 1:18-cv-05767-ELR, 2019 WL 13244544, at *1 (N.D. Ga. Apr. 12, 2019) (striking answer filed by the "owner" of "an artificial, unincorporated entity" on the grounds that the entity could appear only through an attorney); *see also Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) (artificial entities, such as corporations and limited partnerships, must be represented by counsel).

serve X Corp. via any of the authorized methods for serving a corporation under Federal Rule of Civil Procedure 4(h).

Plaintiff attempted to serve X Corp. by sending a copy of the Summons and Complaint via Certified Mail, addressed to X Corp.'s corporate headquarters in San Francisco, and by making a post on X including the handle "@X" that included an image of the Summons. ECF No. 18 at 5, 25, and 31. These attempts at service do not and cannot demonstrate Plaintiff "deliver[ed] a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process," as required by Fed. R. Civ. P. 4(h)(1)(B). *Escudero v. Fed. Nat'l Mortg. Ass'n*, No. 2:14-CV-20-WCO, 2014 WL 12544771, at *2 (N.D. Ga. Apr. 3, 2014) ("service by mail is insufficient under 4(h)(1)(B)").

Plaintiff also did not effectuate service under Georgia law or California law under Federal Rule of Civil Procedure 4(e)(1). *See* Fed. R. Civ. P. 4(h)(1)(A) (permitting service of a corporation "in the manner prescribed by Rule 4(e)(1)); Fed. R. Civ. P. 4(e)(1) (permitting service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made").

Under Georgia law, Plaintiff was required to personally serve the summons and Complaint on certain authorized representatives of X Corp. O.C.G.A. § 9-11-

4(e); *see*, *e.g.*, *Mallory v. DHI Mortg. Co.*, No. 1:18-CV-4579-WMR, 2018 WL 9917672, at *6 (N.D. Ga. Nov. 29, 2018) ("requires personal service upon the appropriate corporate official or authorized agent"). Although a corporation foreign to Georgia like X Corp. may be served by mail if it fails to maintain a registered agent in Georgia, O.C.G.A. § 14-2-504(b), X Corp. maintains one. *See* https://ecorp.sos.ga.gov/BusinessSearch/BusinessInformation?businessId=3930274 &businessType=Foreign%20Profit%20Corporation&fromSearch=True (designating as X Corp.'s registered agent CT Corporation System, at a physical address in Lawrenceville, Georgia). Thus, Plaintiff's mailing of the Summons and Complaint to X Corp.'s corporate address did not comply with the requirements to serve X Corp. under Georgia law.

Plaintiff's attempt at service also failed to comply with California law, because Plaintiff did not "deliver[] a copy of the summons and complaint" to either X Corp.'s registered "agent for service of process" or X Corp.'s "president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process," Cal. Code of Civ. P. § 416.10; nor did she file a notice and acknowledgement signed by X Corp. that mail service was effectuated, Doc. 18 at 4-5, 25; Cal. Civ. P. § 415.30; *see Austin v. Lyft, Inc.*, 21-CV-09345-JCS, 2021 WL

6617452, at *1 (N.D. Cal. Dec. 13, 2021) (service by certified mail is improper under Rule 4(h)(1)(A), and service by mail under California law "is valid only if the complaint and summons are served with the required notice of acknowledgement and an envelope addressed to the sender with prepaid postage and the recipient has signed and returned the acknowledgement of receipt.").[12]

Because Plaintiff failed to properly serve X Corp., this Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5).

## III.   The Court Should Not Grant Leave to Amend

Although Federal Rule of Civil Procedure 15(a) states that courts "should freely give leave [to amend] when justice so requires," dismissal without leave to amend is appropriate where "amendment is futile"—even for pro se plaintiffs. *See Hopkins*, 2011 WL 5921446, at *1 (amendment would be futile because action barred by Section 230); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) ("denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal") (cleaned up). That is the case here. As explained above, Plaintiff's claim is barred by Section 230, the First Amendment, and the Terms governing Plaintiff's use of X. *See* Argument, § I.A.-C.2, *supra*. No

---

[12] Nor did Plaintiff serve X Corp. by publication, which can be made only "if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified." Cal. Code of Civ. P. § 415.50.

amendment to the Complaint can cure these fatal defects. Accordingly, leave to amend should not be granted.

**CONCLUSION**

For all these reasons, Plaintiff's Complaint be dismissed with prejudice.


Dated: February 20, 2024

Respectfully submitted,

SHOOK HARDY & BACON L.L.P.

/s/ *Colin K. Kelly*
 _____
Colin K. Kelly
Georgia Bar No. 781072
ckelly@shb.com
Nia S. Wilson
Georgia Bar No. 914011
nwilson@shb.com
1230 Peachtree Street NE
Suite 1200
Atlanta, GA 30309-3591
(470) 867-6012 (direct CKK)
(470) 867-6024 (direct NSW)

Kenneth M. Trujillo-Jamison (*pro hac vice* pending)
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
Telephone: (213) 955-9240
Facsimile: (213) 955-9250
ktrujillo-jamison@willlenken.com

*Counsel for Defendant X Corp.¸ via Special Appearance Only*

## LOCAL RULE 7.1(D) CERTIFICATION

I certify that this Memorandum has been prepared with one of the font and point selections approved by the Court in LR 5.1(B).

*/s/ Colin K. Kelly*
Colin K. Kelly

*Counsel for Defendant X Corp.¸ via Special Appearance Only*

- 26 -

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2024, I served a copy of the foregoing

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

**DEFENDANT X CORP.'S MOTION TO DISMISS PLAINTIFF'S**

**COMPLAINT** upon all parties of record in this matter using the CM/ECF System.


*/s/ Colin K. Kelly*
Colin K. Kelly

*Counsel for Defendant X Corp.¸ via
Special Appearance Only*